4 3 cv 2958

AOM/AJB

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF MINNESOTA
FOURTH DIVISION

ERIC MICHAEL SORENSON, *PRO SE*,
    PLAINTIFF

V.

MINNESOTA DEPARTMENT OF HUMAN
SERVICES, MINNESOTA SEX OFFENDER
PROGRAM, LUCINDA JESSON, 2013
DEPUTY/ASSISTANT COMMISSIONER OF
THE MINNESOTA DEPARTMENT OF HUMAN
SERVICES, NANCY JOHNSTON, JANNINE
HEBERT, JAMES (AKA "JIM") BERG, KEVIN
MOSER, ASSISTANT DIRECTOR OF THE
MINNESOTA SEX OFFENDER PROGRAM –
MOOSE LAKE FACILITY, TOM (AKA
"TIMOTHY") LUNDQUIST, TARA OSBORNE,
ANGELIQUE BREWER-OTTOM, ROB ROSE,
2013 ASSISTANT GROUP SUPERVISOR OF
THE MINNESOTA SEX OFFENDER PROGRAM
UNIT 1-D OF THE COMPLEX BUILDING,
JENNIFER ABSON, AL JENNINGS, SCOTT
SUTTON, DAVID PAULSON, JAMES
MICHAEL OLSON, MARY SKALKO, TROY
BASARABA, THE 2013 MINNESOTA SEX
OFFENDER PROGRAM – MOOSE LAKE
FACILITY'S ROOMMATE PLACEMENT
COMMITTEE, 2013 MINNESOTA SEX
OFFENDER PROGRAM "A" AND "B" TEAM
COMPLEX SQUADS, AND ALL OTHER
JANE/JOHN DOES WHOSE TRUE NAMES ARE
NOT PRESENTLY KNOWN,
IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES, JOEL BROWN, JEREMY
HAMMOND, IN THEIR INDIVIDUAL
CAPACITIES,
    DEFENDANTS'.

RECEIVED
BY MAIL
OCT 29 2013
CLERK, US DISTRICT COURT
MINNEAPOLIS, MN

PLAINTIFF'S VERIFIED ORIGINAL *PRO SE* CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE DAMAGES AND MONETARY RELIEF

PURSUANT TO 42 U.S.C. § 1983

☒ **JURY DEMANDED.**

D.C. CASE NO.:

_____

HON. _____

MAG. _____

SCANNED
OCT 29 2013
U.S. DISTRICT COURT MPLS.

PLAINTIFF'S VERIFIED ORIGINAL *PRO SE* CIVIL RIGHTS COMPLAINT FOR
INJUNCTIVE DAMAGES AND MONETARY RELIEF

## I.     INTRODUCTION.

1.       This is a federal civil rights action authorized by 42 U.S.C. § 1983, et al,

filed by a *pro per*, Plaintiff , Eric Michael Sorenson, whom is a civil detainee,

whom is detained at The Minnesota Sex Offender Program in Moose Lake

Minneosta (MSOP-ML), located at 1111 Highway 73, Moose Lake, Minnesota

55767. This Complaint alleges that the above named Defendants, in their

individual and official capacities, where applicable, have violated the Plaintiff's

Statutory and Constitutional right(s) pursuant to the Due Process Clause of Section

1 of the Fourteenth Amendment of the United States and Minnesota Constitutions,

Negligence, Intentional and Negligent infliction of emotional distress, assault and

battery, etc.... Specifically, this complaint alleges that the Defendants' have

violated the Plaintiff's Statutory and Constitutional right(s) by performing,

witnessing, etc... the following: being deliberately indifferent to a risk to the

Plaintiff's safety and security and allowing the Plaintiff to be brutally physically

assaulted. In that the Plaintiff now seeks this Honorable Court to order injunctive

relief, monetary damages, and declaratory relief as stated herewithin this

complaint.

## II.    NATURE OF THE CASE.

2.  The Plaintiff brings this complaint, *in propria persona*, and alleges violations of

his civil, statutory, and common law rights. Specifically, the Plaintiff alleges that

the Defendants', in their official capacities, and where applicable, in their

individual capacities, have, among other things:

    *a.* Failed to protect the Plaintiff from a serious risk of harm to a brutal sexual

    and physical assault at the hands of other clients.

### III.   STATEMENTS OF VENUE AND JURISDICTION.

3.  This Honorable Court's Civil Rights and Elective Franchise and Federal Question

jurisdiction pursuant to 28 U.S.C.S. 1343 (a)(3) and 28 U.S.C.S. 1331 is properly

invoked in that this matter involves matters of constitutional question and redress

of grievances, as well as this matter also includes matters of state, and federal laws

arising out of the constitution, laws, treaties, etc… of the United States and of the

State of Minnesota.. Further, this Honorable Court has jurisdiction over the

Defendants' pursuant to 28 U.S.C.S. 1391, in that all of the Defendants' currently

live, reside, and/or work within the State of Minnesota.

### IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES.

4.  The above named Plaintiff has exhausted all of his administrative remedies

accessible to him and have been unfruitful in all attempts. The Plaintiff now seeks

to be restored to his full capacity in regards to his civil and statutory rights.

### V.   PARTY(IES) DELEGATION(S).

*A. Plaintiff.*

5.  Plaintiff, Eric Michael Sorenson, is hereby the sole plaintiff and representing

himself pro se in this matter. He has been assaulted at the hands of the deliberate

indifference of the Defendants' listed herein. The Plaintiff now seeks to be restored of his civil and statutory rights as listed herein.

B. *Defendants'.*

    a. *Artificial.*

6. Defendant, MINNESOTA DEPARTMENT OF HUMAN SERVICES (DHS), is a department of the state and houses the higher supervisory Defendants' in this matter, including but not limited to Lucinda Jesson, Nancy Johnston, and Jannine Hebert, etc.…. This facility is located in Minneapolis, Minnesota. In accordance with MSOP and/or Minn. Stat. the Office of the Minnesota Attorney General is appropriate for service upon this Defendant. It is the crux of a majority of the policies, practices, procedures, etc… which have a direct and proximate cause relevant to this matter. Further, the DHS was created by MSA § 243.03. Further, upon information and belief, the DHS has and continues to implement policies, practices, procedures, etc… that are directly and proximately the cause of the violations of the Plaintiff's constitutional, statutorily, and common law rights as specifically set forth herein.

7. Defendant, MINNESOTA SEX OFFENDER PROGRAM (MSOP), is the entity which currently is detaining the Plaintiff. In accordance with MSOP and/or Minn. Stat. the Office of the Minnesota Attorney General is appropriate for service upon this Defendant. As such, it has two facility locations in the State of Minnesota, the first is in Moose Lake, Minnesota called Minnesota Sex Offender Program – Moose Lake (MSOP-ML), while the second is in St. Peter, Minnesota referred to as

Minnesota Sex Offender Program – St. Peter (MSOP – SP). This complaint focuses on the first of the facilities, MSOP-ML. This facility houses the rest of the Defendants' not mentioned in paragraph 6 of this complaint and not located in the DHS. Further, upon information and belief, the DHS has and continues to implement policies, practices, procedures, etc... that are directly and proximately the cause of the violations of the Plaintiff's constitutional, statutorily, and common law rights as specifically set forth herein.

  *b. Natural.*

8. Defendant, LUCINDA JESSON (JESSON), is the Commissioner of the DHS and is also in charge of the daily operations of the MSOP facilities in the State of Minnesota. In accordance with MSOP and/or Minn. Stat. the Office of the Minnesota Attorney General is appropriate for service upon this Defendant. Further, as Commissioner, Jesson is empowered under the color of state law pursuant to MSA § 245.03. In that, it is upon information and belief that Jesson is the overall supervisor of all of the other Defendants' herein. In that, Jesson has been given the unofficial authority be a "final policy maker" of sorts for the MSOP. Moreover, Jesson is located at 444 Lafayette Road, St. Paul, MN 55155-3826. Finally, upon information and belief, Jesson has and continues to engage in relevant unconstitutional and illegal activities as specifically set forth by the acts and omissions herein.

9. Defendant, NANCY JOHNSTON (JOHNSTON), is the current CEO of the MSOP program facility. In addition, Johnston, in her official capacity and as related to

this matter currently at issue, has the duties to oversee the day to day operations of the MSOP, including but not limited to, duties and/or responsibilities of staff, clients, etc.... In that Johnston has been granted the official powers to be a "final policy maker" for the MSOP. Additionally, Johnston is the supervisor of all other Defendants' specifically set forth herein, with the exception of Jesson. Further, Johnston is currently located at 444 Lafayette Road, St. Paul, MN 55155-3826. Finally, upon information and belief, Johnston has and continues to engage in relevant unconstitutional and illegal activities as specifically set forth by the acts and omissions herein.

10. Defendant, JANNINE HEBERT (HEBERT), is the Executive Clinical Director. In that, it is currently unclear as to what Hebert's job official job duties are, however, upon the development of this matter, the Plaintiff will certainly be informed as to this information. Furthermore, upon information and belief, Hebert is located at the DHS Central Office, located at 444 Lafayette Road, St. Paul, MN 55155-3826. Upon information and belief Defendant Johnston is the supervisor for Hebert. Upon still further information and belief, Hebert has and continues to engage in unconstitutional and illegal actions relevant to the specific facts and omissions set forth herein.

11. Defendant, JAMES (AKA "JIM") BERG (BERG), is the Assistant Clinical Director. In that, it is upon information and belief, that Berg is in charge of assisting Hebert in her duties, although currently it appears, by unspoken rule-of-thumb that Berg is under Defendant Lundquist. Upon still further information and belief, Defendant

Hebert is the supervisor of Berg. However, this will, again, become clear as this case matures. Furthermore, it is upon still more further information and belief that Berg is located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. It is upon yet still information and belief that Berg has and continues to perform unconstitutional and illegal actions relevant to the facts and omissions set forth herein.

12. Defendant, KEVIN MOSER (MOSER), is the Facility Director of the MSOP – ML, in that it is conferred upon him that he is the supervisor of all of the MSOP – ML facility Defendants' being located/employed at that address. Moser is an "unofficial policy – maker". In that, it is upon information and belief, that Moser's immediate supervisor at the time of this complaint was and is currently Defendant Johnston. Moser's official duties include the overseeing of the day to day operations of the MSOP – ML facility. Moser is located at the MSOP – ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Further, Moser has and continues to engage in unconstitutional and illegal actions relevant to the specific acts and omissions set forth herein.

13. Defendant, TOM (AKA "TIMOTHY") LUNDQUIST (LUNDQUIST), is the Clinical Director for the MSOP – ML facility. In that his duties include the overseeing of the Clinical Department within the facility. Additionally, Moser is the supervisor of Lundquist. Furthermore, Lundquist is located at the MSOP – ML facility at 1111 Highway 73, Moose Lake, Minnesota 55767. Further, Lundquist has and

continues to engage in unconstitutional and illegal behaviors that are relevant to the specific acts and omissions listed herein.

14. Defendant, TARA OSBORNE (OSBORNE), is the Complex Unit 1-D Clinical Supervisor for the MSOP-ML facility. Further, Osborne's supervisor is Defendant Lundquist. Additionally, Osborne's job duties include overseeing the Complex Unit 1-D facilitators/primary's within the MSOP-ML facility and she is also an "un-official" final policy maker. Furthermore, Osborne is located at the MSOP - ML facility at 1111 Highway 73, Moose Lake, Minnesota 55767. Further, Upon information and belief, Osborne has and continues to engage in unconstitutional and illegal actions/behaviors as specifically stated as set forth herein.

15. Defendant, ROB ROSE (ROSE), is the Complex Unit 1-D Unit Director (UD). In that, Rose's supervisor is, upon information and belief, Defendant Moser. Further, as a part of Rose's official duties, he is in charge of the day to day safety and security of Unit 1-D in the Complex Building of the MSOP-ML facility, specifically of the clients' safety and of the staff's safety. Rose can be located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Further, Rose has and continues to engage in unconstitutional and illegal behaviors as specifically set forth herein this complaint.

16. Defendant, JENNIFER ABSON (ABSON), is the Unit 1-D Unit Lead. Abson's supervisor is Defendant Rose. Furthermore, Abson's duties entail assisting with complex unit 1-D to keep order, safety, and security. Further, the night of the incidents described, Abson was on duty and had first-hand knowledge of the

specific events and omissions set forth herein. Abson can be located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Further, Abson has and continues to take unconstitutional and illegal actions in regards to this matter.

17. Defendant, AL JENNINGS (JENNINGS), is a "Rover" Security Counselor (SC), which essentially means that Jennings works in different locations each night depending on where the Defendants' need the most assistance that evening, thus his official duties change from one night to the next. Further, the night of the incidents described, Jennings was on duty and had first-hand knowledge of the specific events and omissions set forth herein. Further, it is currently unclear as to whom this Defendant's supervisor is, however it is sure to be developed during the maturing process of this matter. However, Jennings is currently located at the MSOP – ML facility, 1111 Highway 73, Moose Lake, Minnesota 55767. In that, Jennings has and continues to take unconstitutional and illegal actions in regards to this matter.

18. Defendant, DAVID PAULSON (PAULSON), is the Medical Director for the MSOP, further, upon information and belief he is also a medical director for the Minnesota Department of Correction (DOC) inmates. It is currently unclear as to the supervisor of Paulson; however it is surely to be developed during the maturing process of this matter. Upon information and belief, Paulson does have a criminal background. Further, Paulson is in charge of the overall health care with the ability to mandate and/or issue policies for the Health Services Defendants. In that,

Paulson, upon information and belief, is located at the DHS Central Office, located at 444 Lafayette Road, St. Paul, MN 55155-3826. Further, upon further information and belief, Paulson has and continues to engage in unconstitutional and illegal behaviors.

19. Defendant, SCOTT SUTTON (SUTTON), is the Health Services Director for the MSOP – ML facility. It is currently unclear as to what Sutton's job duties entail; however, this is surely expected to be clear as this case develops. It is upon information and belief, Defendant Paulson and/or Defendant Hebert is the supervisor of Sutton. Upon further information and belief, Sutton is currently located at the DHS Central Office, located at 444 Lafayette Road, St. Paul, MN 55155-3826. Upon still further information and belief, Sutton has and continues to engage in unconstitutional and illegal behaviors as set forth in the specific acts and omissions listed in this complaint.

20. Defendant, JAMES MICHAEL OLSON (OLSON), is the Registered Nurse (R/N) Supervisor for the MSOP – ML facility. Olson is in charge of supervising the R/N's that are employed by the MSOP-ML facility. Defendant Skalko, upon information and belief, is the supervisor of Olson. Olson is currently located at the MSOP – ML facility Health Services Department, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Upon still further information and belief, Olson has and continues to engage in unconstitutional and illegal behaviors as set forth in the specific acts and omissions listed in this complaint.

21. Defendant, MARIE SKALKO (SKALKO), is the R/N Administrative Supervisor for the MSOP-ML facility. Skalko is in charge of the daily operations within the Health Services Department, specifically, *inter alia,* the R/N's who have been employed in the Health Services Department. Upon information and belief, the supervisor of Skalko is Defendant Sutton. Skalko is currently located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Upon still further information and belief, Skalko has and continues to engage in unconstitutional and illegal behaviors as set forth in the specific acts and omissions listed in this complaint.

22. Defendant, TROY BASARABA (BASARABA), is the security director of the MSOP-ML facility. In that he is in charge of the security and safety overall of the clients and staff at the MSOP-ML facility. Furthermore, it is unclear as to whom Basaraba's supervisor is, however, this will likely be established through the maturing process of this matter. Further, Basaraba is currently located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, Minnesota 55767. Furthermore, Basaraba has and currently is engaging in unconstitutional and illegal actions relevant to this matter.

   c. *Defendants' sued in their individual capacities only (Non-State Employees/Actors).*

23. Defendant, JOEL BROWN (BROWN), is a client within the MSOP-ML facility. Brown committed a serious act of assault and battery on the Plaintiff. Furthermore, he can be located at the MSOP-ML facility, located at 1111 Highway 73, Moose

Lake, MN 55767. In that Brown is currently sued for statutory liability/personal injury claims in his individual capacity as further stated herein.

24. Defendant, JEREMY HAMMOND (HAMMOND), is a client within the MSOP-ML facility. Brown committed a serious act of sexual assault and battery on the Plaintiff. Furthermore, he can be located at the MSOP-ML facility, located at 1111 Highway 73, Moose Lake, MN 55767. In that Brown is currently sued for statutory liability/personal injury claims in his individual capacity as further stated herein.

　　　d. *Unknown and/or Doe Defendants'.*

25. Defendant, 2013 DEPUTY COMMISSIONER OF THE MINNESOTA DHS (HEREINAFTER REFERRED TO AS "DOE #1"). Doe #1's duties include assisting Lucinda in the daily functions of her duties. Further, as the Assistant/Deputy Commissioner, Doe #1's supervisor is Jesson. Doe #1 can be located at the DHS Central Office, located at 444 Lafayette Road, St. Paul, MN 55155-3826. Furthermore, Doe #1 has and continues to take illegal and unconstitutional actions in relevance to this matter currently at issue.

26. Defendant, ASSISTANT DIRECTOR OF THE MSOP-ML FACILITY (HEREINAFTER REFERRED TO AS "DOE #2"). Doe #2's duties include the assisting of Moser in the course of his daily duties within the MSOP-ML facility. As the Assistant Director of the MSOP – ML facility, Doe #2's supervisor is Defendant Moser. Additionally, Doe #2 is located at the MSOP-ML facility, which is located at 1111 Highway 73, Moose Lake, Minnesota 55767. Upon information and belief, Doe #3

has and continues to perform unconstitutional and illegal actions with respect to the specific acts and omissions listed within this complaint.

27. Defendant, THE 2013 MSOP – ML FACILITIES ROOMMATE PLACEMENT COMMITTEE (COLLECTIVELY REFERRED TO HEREINAFTER AS "DOE #3"). Is a committee that, as it relates to this matter currently at issue, decides on client incompatibilities after client assaults. Further, as it is unclear as to who was serving on the committee at the time of the specific acts and omissions listed herein and as it relates to the present matter at issue. Therefore, Doe #3, as it relates to a group of individuals is listed in its entirety to combine all members of the 2013 MSOP – ML Facility's Roommate Placement Committee. Additional, should such individual names be discovered, the Plaintiff reserves the right to add those names to this matter. In that, it is upon information and belief, that Doe #3 is located at the MSOP – ML facility, located at 1111 Highway 73 Moose Lake, Minnesota 55767. Upon information and belief, Doe #3 has and continues to perform unconstitutional and illegal actions with respect to the specific acts and omissions listed within this complaint.

28. Defendant, MSOP-ML UNIT 1-D ASSISTANT GROUP SUPERVISOR (DOE #4). Doe #4, upon information and belief, is in charge of assisting and supervising the staff and clients within Unit 1-D at the MSOP-ML facility in the complex building. Further, as the AGS, it is upon further information and belief, that Defendant Rose is the supervisor of Doe #4. Furthermore, it is upon still further information and

belief that Doe #4 has and continues to perform illegal and unconstitutional actions in regards to this matter.

29. All other Jane/John Does whose true names are not presently known are hereinafter parties to this matter currently at issue.

    *a. Legal Statements Regarding Defendants'.*

30. All Defendants' listed herein have and continue to act under the Color of State Law in the performance of their duties and at the times of the specific acts and omissions listed herein.

31. All Defendants' are currently sued in their individual and, where applicable, official capacities for the specific acts and omissions listed herein this complaint.

## VI.   FACTUAL ALLEGATIONS.

**A. DEFENDANTS' DELIBERATE INDIFFERENCE TO FAILURE TO PROTECT THE PLAINTIFF FROM A BRUTAL ASSAULT ON HIM AND THE PLAINTIFF'S SERIOUS MEDICAL NEEDS.**

32. On or about 10/18/2013 at approximately 11:00 PM, the Plaintiff was brutally assaulted by his roommate, Joel Brown (Mr. Brown) due to the Defendants' deliberate indifference to a risk to the Plaintiff's safety. In that the Plaintiff did not retaliate against Mr. Brown when the assault occurred.

33. The brutal and senseless assault on the Plaintiff on or about 10/18/2013 consisted of Mr. Brown physically hitting extremely hard the head, back and arm area of the Plaintiff. Further Mr. Brown cut off any access to the Plaintiff to summon for help and the Defendants' provided no security procedure, policies, etc… in place to

assist with the aid to the Plaintiff during the attack. Moreover, Mr. Brown had stated that he had a weapon and would use it if I told anything to the Defendants'.

34. However, prior to the Plaintiff being assaulted, the Defendants' had moved the Plaintiff and Mr. Brown into the same room together.

35. Shortly thereafter, the Plaintiff told the Defendants' that him and Mr. Brown where not getting along.

36. From there the Defendants', the Plaintiff, and Mr. Brown met in a "staff facilitated mediated session" to resolve the differences.

37. These staff facilitated mediated sessions, called for by the Plaintiff and sometimes the Defendants', happened frequently and where unfruitful at the resolve of the differences between the Plaintiff and Mr. Brown.

38. The Defendants' where a witness to every one of the unfruitful mediated sessions and made the conscious and deliberate choice to keep the Plaintiff and Mr. Brown in the same room.

39. The Plaintiff has made every attempt at removing himself from the perpetual violence at the hands of Mr. Brown by seeking the assistance from the Defendants', however; the Defendants' kept denying the Plaintiff to allow him to remove himself from the brutal physical and perpetual violence at the hands of Mr. Brown.

40. Additionally, on or about 10/23/2013, the Defendants' made the conscious choice to move Mr. Brown back onto the same unit as the Plaintiff, even after the

Plaintiff made it known to the Defendants' that there is and was an extreme risk to his safety currently.

41. Further, the Defendants' where and remain deliberately indifferent to the failure to protect the Plaintiff from the brutality at the hands of Mr. Brown via notification of the specific acts and omissions stated herein via client requests, staff facilitated mediated sessions, informal communications with staff, etc.... Further, the Defendants' should have known there was a risk of harm to the Plaintiff, as Mr. Brown has had an excessive history of physical violence in the past and the Plaintiff is a person whom is of a stature to be excessively at risk to violence, as the Plaintiff has been diagnosed (1) Muscular Dystrophy (MD) from birth, (2) *extremely* degenerated and enfeebled bone structure, including but not limited to bones in the skull where Mr. Brown's major target of his attack was targeted, (3) Borderline Personality Disorder (BPD) and Anti-Social Personality Disorder (ASPD), which makes the Plaintiff afraid to protect himself in fear of getting hurt. Moreover even though these communications where made to the Defendants', the Plaintiff never received any assistance to remedy the situation and protect him from harm.

42. Additionally, the Defendants' had shown and provided proof of the deliberate indifference via stating to the Plaintiff and Mr. Brown, after a staff mediated session, that the session "did not go according to plan" and that "you guys seem to be pissed off at each other because you both threatened each other". The Defendants proceeded to state "well there's not much we can do for you guys but

we don't want to switch you rooms for right now." This unreasonable excuse by the Defendants' went on up until the brutal and senseless assault on the Plaintiff.

43. Further, upon information and belief, this deliberate indifference to the Plaintiff's safety was even more evident when Mr. Brown himself stated via roommate move requests that there was serious problems and precisely what the problems consisted of the Defendant did not move the Plaintiff nor Mr. Brown even after being requested to.

44. Additionally and ultimately, due to the extreme demonstration of deliberate indifference to the Plaintiff's safety at the hands of the Defendants, the Plaintiff was brutally and senselessly assaulted at the hands of Mr. Brown.

45. From the physical, brutal, and needless violence manifested as assault portrayed upon the Plaintiff at the hands of Mr. Brown and from the Defendants' deliberate indifference to the Plaintiff's situation, the Plaintiff has and continues to get migraine-like headaches, excessively bloody noses, and blurred vision, and loss of hearing. Additionally, the Plaintiff has also and continues to suffer from memory loss of certain situations, and has seen spots in his vision at times. Further, the Plaintiff has suffered from emotional and psychological distress and harm via visions of the assault on him and phantom pains due to the assault. Moreover, the Plaintiff has suffered a loss to his social status and reputation as he was excessively teased and restricted from his movement by other clients same or similarly situated and some staff/Defendants.

46. Additionally, the Health Services Department Defendants' failed to check the Plaintiff for concussions, as the Plaintiff was hit in the head numerous times and failed to provide the Plaintiff with any adequate medical care for his head wounds, leaving the Plaintiff at a serious risk of dying the night of the brutal assault on him due to his serious medical injuries.

47. On or about 10/21/2013, the Plaintiff had reported to the Defendants' that Mr. Brown had a reported history of violent behavior and that he did not feel comfortable being around Mr. Brown. However, even after this knowledge and the assault, the Plaintiff was explicitly told by the Defendants' that Mr. Brown maybe directed to be around each other.

**B. REPRISAL AND RETALIATORY ACTIONS TAKEN ON BEHALF OF THE DEFENDANTS' TOWARDS THE PLAINTIFF.**

48. Shortly after the Plaintiff stated he was going to sue the Defendants' for failure to protect him and started to ask about why the Defendants' did not follow their policies, practices, procedures, etc..., the Defendants' started to take reprisal actions towards the Plaintiff.

49. Additionally, the Plaintiff was engaged in statutorily protected behavior via the filing of redress of grievances against the Defendants.

50. The Defendants', once they knew of this, issued the Plaintiff a Major Behavioral Expectations Report (BER) for falsely accusing the Plaintiff of threatening others, which consequentially places the Plaintiff's vocational placement at a serious risk of loss thus the Plaintiff would indeed suffer great economic loss to his economic

security, as this is the only monies that the Plaintiff has access to and which he is not at liberty to find an external job outside of the facility, nor does he have any means of collecting General Assistance, as it is currently under appeal. Thus, essentially, by removing the Plaintiff from his vocational placement, the Defendants' have essentially taken all of the funding the Plaintiff needs to purchase the essential products, to which the facility/Defendants' do not otherwise provide the Plaintiff.

51. Furthermore, when the purported threatening of other's that the Defendants' purport happened, the Plaintiff was under medically induced anger due to psychotropic medications he was given by the Psychological Services Department at the MSOP facility that was proscribed by the Defendants'.

52. The Plaintiff made the fact known that he was under psychotropic medications at the time the Defendants' stated that the Plaintiff committed the purported threats, however, that was never taken into account by the Defendants'.

53. Further, there was a causal connection between the Defendants' retaliatory actions towards the Plaintiff and the Plaintiff exercising his constitutional and statutory rights.

## C. DELIBERATE INDIFFERENCE TO THE FAILURE TO PROTECT THE PLAINTIFF FROM SEXUAL ASSAULT AND THE PLAINTIFF'S SERIOUS MEDICAL NEEDS.

54. The Plaintiff was needlessly and brutally sexually assaulted on or about 2012 by Jeremy Hammond (Mr. Hammond), the proximate cause of which was the deliberately indifference to the Plaintiff's safety.

55. The brutal assault on the Plaintiff at the hands of Mr. Hammond consisted of the Plaintiff being forcefully sodomized and pressured into many unwanted acts. The other additional acts were the Plaintiff was forced to perform oral and digitally masturbate Mr. Hammond. Further Mr. Hammond told the Plaintiff that if he did not do these things, he would make sure that the Plaintiff would be going to the intensive care unit at the hospital. Mr. Hammond had threatened to throw his television at the Plaintiff and stated he has done this behavior in the past if the Plaintiff did not comply with what Mr. Hammond had asked of the Plaintiff. Further, at the time of the brutal sexual assault on the Plaintiff at the hands of Mr. Hammond, Mr. Hammond had stated to the Plaintiff, as a matter of fact, that indeed he did have an STD and it was believed to be AIDS.

56. Prior to the brutal sexual assault at the hands of Mr. Hammond, the Plaintiff had told the Defendants', in explicit detail, that Mr. Hammond had threatened to sexually assault me and what Mr. Hammond had done in the past, and the Defendants' failed to remedy the situation to abate the risk of safety to the Plaintiff at the hands of Mr. Hammond. However, the Defendants' merely told the Plaintiff to "use his skills".

57. The Plaintiff and Mr. Hammond had undergone a myriad of staff mediated sessions in which the Defendants' sat in on, however, even to the Defendants' own understanding and admittance, they were wholly unfruitful and actually made the risk to the Plaintiff's safety worse.

58. Further in the staff facilitated mediated sessions, being attended again by the Defendants', Mr. Hammond, had self-disclosed that he had inappropriately sexually touched the Plaintiff in the past. However, the Defendants' dismissed this stating to both Mr. Hammond and the Plaintiff to "use your skills".

59. The Plaintiff is an especially susceptible to sexual attacks at the hands of other clients within the MSOP facility. Further, to support this theory the Plaintiff now re-incorporates and re-alleges paragraph No. 15 as if it were re-pleaded in its entirety here.

60. From the assault on the Plaintiff at the hands of Mr. Hammond, the Plaintiff suffered multiple injuries and risk of serious injuries such as, (1) the extremely high risk of STD's, (2) physiological problems such as (a) flash backs, (b) paranoia, and (c) depression, etc....

61. Additionally, after the sexual assault the Defendants' transported the Plaintiff to Mercy Hospital (Mercy) in Moose Lake, Minnesota to be seen by a doctor.

62. While at Mercy, the Plaintiff was seen and given doctors' orders by the presiding medical doctor stating to provide STD testing to the Plaintiff for any STD's.

63. However, upon arrival at the MSOP, the Defendants' self-disclosed to the Plaintiff that they lost the medical orders from the doctor at Mercy. Subsequently the Plaintiff was never given any medical attention for any of the orders given, including but not limited to STD testing, which further placed the Plaintiff at an increased risk of dying.

## VII.  COUNTS ALLEGED.

64. The Plaintiff re-alleges and reincorporates the above paragraphs herein this complaint currently at issue as if they had been reproduced here in their entirety.

A. CONSTITUTIONAL CLAIMS.

    a. ***Failure to Protect claims.***

COUNT 1.

**DEFENDANTS' DELIBERATE INDIFFERENCE TO AN EXTREME RISK OF PHYSICAL ASSAULT ON THE PLAINTIFF.**

65. The Plaintiff has a special relationship with the state, as he is currently detained within the MSOP – ML program and is devoid of his right to self-defense.

66. The Due Process Clause of Section 1 of the Fourteenth Amendment states:

"All Persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *See* Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Const.

67. The Plaintiff is even further protected under the Minnesota Constitution of Art. 1, Sec. 2, which states:

"No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the

judgment of his peers. There shall be neither slavery nor involuntary servitude in the state otherwise than as punishment for a crime of which the party has been convicted." *See* Minn. Const. Art. 1 Sec. 2.

68. In that, the Due Process Clause of Section 1 of the Fourteenth Amendment and Art. 1 Sec. 2 of the Minnesota Constitutions protects the Plaintiff, being a civil detainee, from a deliberate indifference to the Plaintiff's safety within a secured facility while in state custody.[2]

69. Further, this Honorable Court has previously roundly opined that the Defendants' need not be aware of the exact details of the risk to the Plaintiff's safety, however, it is enough that the Defendants' are notified that there is an excessive risk to support a showing that a substantive risk to the Plaintiff's safety exists.

70. Within the communications with the Defendants' and the Plaintiff and Mr. Brown, where applicable, the Plaintiff had stated specifically what he was in fear from Mr. Brown and had stated that Mr. Brown had threatened to throw him off the tear even and the Defendants' refused to intervene at that time and simply stated for the Plaintiff to "use his skills".

71. Surely then, as was stated and inferred by the specific acts and omissions listed within this complaint, the Defendants' knew that there was a substantive and substantial risk of harm to the Plaintiff at the hands of Mr. Brown via the

---

[2] Crow v. Montgomery, 403 F.3d 598, 601-02 (8th Cir. 2005); *See also* <u>Hart v. Sheahan</u>, 396 F.3d 887, 892-93 (7th Cir. 2005).

grievances, client requests, informal conversations, staff mediated sessions, etc…

between the Plaintiff, the Defendants' and Mr. Brown explicitly explaining the

substantive and substantial risk of harm to the Plaintiff which ultimately played

out.

72. Further, the Defendants' failed to have adequate control over the clients,

especially the clients that have demonstrated excessively violent behaviors (e.g.

Mr. Brown) which have led to the brutal and needless assault on the Plaintiff.

73. In addition, and possibly the most disturbing fact, as stated earlier, the

Defendants', on 10/23/2013 decided to move Mr. Brown back into the same unit

as the Plaintiff was located over any valid objections to his safety that the Plaintiff

made. Further, it is a well-known fact that that the units are not monitored for

safety as there are an excessive amount of physical assaults that happen within the

facility.

74. Surely then, the Defendants' where all deliberately indifferent to the Plaintiff's

serious risk of his safety at the hands of Mr. Brown.

75. Further, certainly then it is an unassailable fact that by the Defendants' allowing

Mr. Brown to gain direct and immediate access to the Plaintiff, it showed and

exhibited further deliberate indifference to the Plaintiff's risk to safety.

76. Thus, since the Defendants' had failed to intervene on a known risk of serious

harm to the Plaintiff's safety at the hands of Mr. Brown and further showed

deliberate indifference to such a risk of serious harm to the Plaintiff, as

demonstrated by the specific acts and omissions listed within this complaint, the

Defendants' have violated the Plaintiff's well established rights to be free from the Defendants' deliberate indifference to a serious risk of harm to the Plaintiff, in violation of the Due Process Clause of Section 1 of the Fourteenth Amendment of the United States Constitution and the same under the Minn. Const..

77. Defendants, including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

78. The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

79. Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

80. Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## COUNT 2.

## DEFENDANTS' DELIBERATE INDIFFERENCE TO THE RISK OF BRUTAL SEXUAL ASSAULT ON THE PLAINTIFF.

81. The Plaintiff re-pleads paragraphs 65 through and including 69 and re-incorporates them in their entirety as if they were reproduced herein this section.

82. As pleaded earlier in this complaint from the specific acts and omissions listed herein, in the communications with the Defendants', Mr. Hammond has stated that he had previously committed an act of outrageous sexual abuse against the Plaintiff and yet the Defendants' refused to remedy the grave risk of harm to the Plaintiff. Additionally, in other communications with the Defendants' through letters, requests, informal conversations, staff mediated sessions with Mr. Hammond, the Defendants' became aware of the grave risk of the Plaintiff's safety, as Hammond stated that he has thrown a TV at people (pleaded earlier in this complaint) when they, so-called, "snitched" on him. Thus, even by the Defendants' verbal admission, stated that the Plaintiff was at an increased risk of harm and failed to remedy and adequately prevent the severe harm to the Plaintiff.

83. Mr. Hammond, which the Defendants' where well aware, had verbally threatened the Plaintiff's life on numerous occasions stating that "he would kill the Plaintiff if he ever told" and that "he didn't care if he went back to prison because it was just time to him."

84. Further, the Plaintiff is of a vulnerable stature, being exceptionally at risk of sexual assault. Moreover, Mr. Hammond, which the Defendants' where aware, has

had an exceptionally violent past, as exhibited by his discipline history while

within and out of the Defendants' custody.

85. Additionally, the Defendants' acted with a culpable state of mind, showing

deliberate indifference by refusing to remedy the serious risk of harm of sexual

assault at the hands of Hammond via refusing to move the Plaintiff.

86. Surely then acts of a brutal sexual assault, which the Defendants' where

deliberately indifference to, even at a threat level, would patently and roundly

represent a "risk to the Plaintiff's health and safety."

87. Further, the Defendants', as pleaded earlier allowed Mr. Hammond, after he

brutally sexually assaulted the Plaintiff, immediate access to the Plaintiff in an

unsupervised and unsecured manner.

88. Furthermore, it can be definitely stated then that by the Defendants' allowing Mr.

Hammond to have direct and immediate unsupervised contact with the Plaintiff

after brutally sexually assaulting the Plaintiff clearly demonstrates, as an

unassailable fact, that the Defendants' have displayed further deliberate

indifference to the Plaintiff's risk of harm.

89. Thus, for the Defendants' acts of deliberate indifference to the Plaintiff's health

and safety via the allowed brutal and senseless sexual assault upon the Plaintiff at

the hands of Mr. Hammond, as stated by the specific acts and omissions listed

herewithin, the Defendants' have violated the Plaintiff's well-established rights to

be free from a severe risk of harm to him and *especially sexual assaults* pursuant

to the Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and the same under the Minn. Const..

90. Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2,, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

91. The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

92. Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

93. Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

   *b.* ***Procedural Due Process Claims.***

**COUNT 3.**

**DEFENDANTS' FAILURE TO PROVIDE ADEQUATE PROCEDURAL DUE PROCESS.**

94. Under the umbrella of the Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Const., the Plaintiff has an inferred right to be free from any medically induced incidents and must be acting of his own free will.

95. As previously stated, the Plaintiff was under a medically induced state of rage when purportedly, the Defendants' purport unsupported by any facts, that the Plaintiff threatened another client within the MSOP program and the Defendants' subsequently issued a Major BER to the Plaintiff for the incident.

96. In that, the Plaintiff was proscribed the medications and induced severe medical rage by the Defendants'.

97. Thus, the Defendants' essentially set the Plaintiff up to be rage-full and receive a major BER via proscribing the Plaintiff medications that induce rage.

98. Therefore, the for the issuance of a major BER to the Plaintiff by the Defendants' and setting the Plaintiff up for it, as stated by the specific acts and omissions listed within the complaint herein, the Defendants' have violated the Plaintiff's well-established rights pursuant to the Due Process Clause of Section 1 of the Fourteenth Amendment of the United States Constitution and the same under the Minn. Const. Art. 1 § 2.

99. Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2,, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this

complaint and did nothing to prevent this conduct from occurring and actively

participated in such conduct, and further have failed to train and supervise the

subordinate Defendants' in this matter.

100.   The Plaintiff has been subject to and injured by theses alleged violations

and suffered damages as a direct and proximate result of Defendants' acts and

omissions as specifically set forth above.

101.   Furthermore, as further  Defendants' MSOP and DHS have enacted and

follow policies, practices, procedures, whether verbally stated in whatever media

or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate

cause of the Plaintiff's injuries as specifically set forth above.

102.   Unless relief is granted, the Plaintiff will continue to be injured by and

suffer damages as a direct and proximate result of Defendants' acts and omissions

specifically set forth above.


c. *Inadequate Medical Care Claims.*

## COUNT 4.

### DEFENDANTS' DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS AFTER A PHYSICAL BRUTAL ASSAULT.

103.   The Plaintiff, being a civil detainee, is not eligible for that of pleading

under the Cruel And unusual Clause of the Eighth Amendment of the United

States Constitution; however, this Honorable Court has stated that he does have a

right under the Due Process Clause of Section 1 of the Fourteenth Amendment of the United States Constitution.

104.     These protections/rights secured under the Due Process Clause of the U.S. Constitution extend even further onto the State of Minnesota's own constitution under art. 1 sec. 2.

105.     This Honorable Court has satiated the fact that a "serious medical need" is one (1) that is diagnosed by a doctor, and/or (2) that is serious enough to be commented on by the individual (the Plaintiff), and/or (3) that is obvious even to a lay person.[3]

106.     However, it is generally held that a physical assault, especially a brutal physical assault, such as the one claimed by the specific acts and omissions listed herein this complaint, causes a serious medical need.

107.     Earlier in this complaint, in the specific acts and omissions relied upon in this complaint, the Plaintiff stated that the Defendants' failed to provide medical treatment to the Plaintiff after he was brutally assaulted by not offering the Plaintiff any options to remedy his ailments listed in this complaint as a direct and proximate result of the brutal assault on the Plaintiff at the hands of Mr. Brown.

108.     The Defendants' deliberate indifference to his physical ailments as demonstrated and stated by the facts and omissions listed in this complaint that where the direct and proximate result of the assault on the Plaintiff at the hands of

---

[3] Collins v. Turner, 2012 U.S. Dist. LEXIS 10289 (January 30th, 2012) (A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."), *citing* Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1992).

Mr. Brown, violated the Plaintiff's well-established rights to Due Process pursuant to the Due Process clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution and the same under the Minn. Const..

109.    Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

110.    The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

111.    Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

112.    Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

**COUNT 5.**

**DEFENDANTS' DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS**

**MEDICAL NEEDS AFTER A PHYSICAL BRUTAL SEXUAL ASSAULT.**

113.    The Plaintiff re-pleads paragraphs 103 through and including 105 and re-incorporates them in their entirety as if they were reproduced herein this section.

114.    The courts have held that, as a generality, sexual assaults are considered automatically to be a serious medical need.

115.    In that, as this matter deals with a sexual assault, the Plaintiff need not prove that he has a serious medical need.

116.    Further, as to the second prong of the issue, as satiated earlier in this complaint, the Plaintiff, through a doctor's orders, was informed to, including but not limited to give the Plaintiff STD testing, etc....

117.    Further, as stated, the Plaintiff was prevented from receiving the medical care of which the doctor otherwise ordered, as the transport Defendants' self-disclosed that they mislaid the paperwork from the doctor.

118.    That paperwork again contained the orders to provide me, *inter alia,* STD testing, in which the Defendants' failed to apply here.

119.    Thus, when Defendants' fail to follow and carry out a qualified doctors' orders, it is one of the ways that this Honorable Court has found the Defendants' acting with deliberate indifference to a serious medical need.

120.    Therefore, because the Defendants' have failed to provide and have been and continue to be deliberately indifferent to the Plaintiff's serious medical need of assault, as stated within the specific acts and omissions listed herewithin this

complaint, in violation of the Plaintiff's well-established rights of being protected

from the deliberate indifference to the Plaintiff's serious medical needs in

violation of the Due Process Clause of Section 1 of the Fourteenth Amendment.

121.    Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine

Hebert, Berg, Moser, and Doe #2, in their individual as well as their official

capacity, where each aware of the policies and practices that where implemented

at MSOP that where relevant to the specific acts and omissions listed within this

complaint and did nothing to prevent this conduct from occurring and actively

participated in such conduct, and further have failed to train and supervise the

subordinate Defendants' in this matter.

122.    The Plaintiff has been subject to and injured by theses alleged violations

and suffered damages as a direct and proximate result of Defendants' acts and

omissions as specifically set forth above.

123.    Furthermore, as further  Defendants' MSOP and DHS have enacted and

follow policies, practices, procedures, whether verbally stated in whatever media

or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate

cause of the Plaintiff's injuries as specifically set forth above.

124.    Unless relief is granted, the Plaintiff will continue to be injured by and

suffer damages as a direct and proximate result of Defendants' acts and omissions

specifically set forth above.

   d. *__Equal Protection Claims.__*

### i.    *Class of one Claims.*

## COUNT 6.

## DEFENDANTS' FAILURE TO EQUALLY PROTECT THE PLAINTIFF FROM ASSAULT.

125.    The Defendants' have a requirement/Duty to the Plaintiff to provide equal protection as persons same or similarly situated as him via applying the laws of the United States and of the State of Minnesota equally pursuant to the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the U.S. Const. and the same pursuant to the Minn. Const. Art. 1 Sec. 2.

126.    In that, the courts have held that (1) the Plaintiff and other persons need not be unerringly in the same situational circumstances as each other, similarities are good enough to satiate the "same or similarly situated criteria", and (2) for the purposes of pleading a "class of one" equal protection claim, the Plaintiff need not plead that he is of a protected class.

127.    Surely then, the Defendants' on other occasions, although rare, have moved and separated other persons same or similarly situated that where in a risk of harm of physical assault or other injuries.

128.    The Plaintiff is same or similarly situated via being detained within the MSOP and being held to the same standards, rules, policies, procedures, etc... as those listed and averred to in paragraph 127.

129.    However, surely by not applying the equality of the laws to the Plaintiff when he sought reasonable remedy to effectuate his safety, the Defendants' surely then did not provide, nor apply, equal protection standards to the Plaintiff as those

persons whom where same or similarly situated at the times of the specific acts and omissions listed herein this complaint.

130.     Thus, due to the Defendants' failure to remove the Plaintiff from harm to remedy the serious risk and actual events of assault as would otherwise be done with same or similar situated persons, as stated within the specific acts and omissions listed within this complaint, surely violates the Plaintiff's well established rights to be treated equally by the Defendants' in violation of the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the United States Constitution and the same under the Minn. Const. Art. 1 Sec. 2.

131.     Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

132.     The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

133.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate

cause of the Plaintiff's injuries as specifically set forth above.

134.     Unless relief is granted, the Plaintiff will continue to be injured by and

suffer damages as a direct and proximate result of Defendants' acts and omissions

specifically set forth above.

## COUNT 7.

## DEFENDANTS' FAILURE TO EQUALLY PROTECT THE PLAINTIFF FROM SEXUAL ASSAULT.

135.     The Plaintiff re-pleads paragraphs 125 and 126 and incorporates these

paragraphs as though they were re-plead in their entirety here.

136.     Surely then, the Defendants' on other occasions, although rare, have moved

and separated other persons same or similarly situated that where in a risk of harm

of physical sexual assault or other injuries.

137.     The Plaintiff is same or similarly situated via being detained within the

MSOP and being held to the same standards, rules, policies, procedures, etc... as

those listed and averred to in paragraph 136.

138.     Thus, due to the Defendants' failure to remove the Plaintiff from harm to

remedy the serious risk and actual events of a brutal sexual assault as would

otherwise be done with same or similar situated persons, as stated within the

specific acts and omissions listed within this complaint, surely violates the

Plaintiff's well established rights to be treated equally by the Defendants' in

violation of the Equal Protection Clause of Section 1 of the Fourteenth

Amendment of the United States Constitution and the same under the Minn. Const. Art. 1 Sec. 2..

139.     Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

140.     The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

141.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

142.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

    ii.     ***Desperate Impact Equal Protection Claims.***

### COUNT 8.

**DEFENDANTS' FAILURE TO EQUALLY PROTECT THE PLAINTIFF FROM ASSAULT.**

143.   The Courts have stated that when pleading a disparate impact claim that he must plead that the Plaintiff is required to plead that he is a member of a protected class.

144.   In that, the Plaintiff is a member of the protected classes of a white male whom is a citizen of the U.S.

145.   Further, since the Desperate impact claims are near identical to the "Class of One" equal protection claims, and because the Plaintiff has patently satiated the criteria for a Class of one claim and the only difference is the pleading of a protected class, which the Plaintiff has satiated, the Plaintiff will simply re-plead and re-incorporate paragraphs 125 through and including 129 of this complaint, as if they were plead here in their entirety.

146.   Thus, due to the Defendants' failure to remove the Plaintiff from harm to remedy the serious risk and actual events of assault as would otherwise be done with same or similar situated persons, and because the Plaintiff is a member of a protected class of individual, as stated within the specific acts and omissions listed within this complaint, surely violates the Plaintiff's well established rights to be treated equally by the Defendants' in violation of the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the United States Constitution and the same under the Minn. Const. Art. 1 Sec. 2.

147.   Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official

capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

148.    The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

149.    Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

150.    Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

**COUNT 9.**

**DEFENDANTS' FAILURE TO EQUALLY PROTECT THE PLAINTIFF FROM SEXUAL ASSAULT.**

151.    The Plaintiff re-pleads and re-incorporates by reference as if they were reproduced in their entirety here paragraphs 125 through and including 126 and paragraphs 135 through and including 137 of this complaint.

152.    Thus, due to the Defendants' failure to remove the Plaintiff from harm to remedy the serious risk and actual events of a brutal sexual assault as would otherwise be done with same or similar situated persons, and because the Plaintiff is a member of a protected class of individual, as stated within the specific acts and omissions listed within this complaint, surely violates the Plaintiff's well established rights to be treated equally by the Defendants' in violation of the Equal Protection Clause of Section 1 of the Fourteenth Amendment of the United States Constitution and the same under the Minn. Const. Art. 1 Sec. 2.

153.    Defendants , including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

154.    The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

155.    Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

156.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### e. *Retaliation Claims.*

### COUNT 10.

### DEFENDANTS' RETALIATION ON THE PLAINTIFF VIA ALLOWING THE BRUTAL ASSAULT ON THE PLAINTIFF TO OCCUR.

157.     The Plaintiff has a right to be protected from retaliation at the hands of a government official. This right is pursuant to the Freedom of Expression Clause of the First Amendment of the U.S. Const., which states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See* Freedom of Expression Clause, First Amend., U.S. Const.

the Minnesota Const. States:

"The liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right.". *See* Minn. Const. Art. 1 § 3.

158.     As stated, the Plaintiff had filed numerous grievances against higher and lower ranked Defendants'. In filing those grievances the Plaintiff was exercising his well-established protected right to file for redress of grievances under the Freedom of Expression and Petition clauses of the First Amendment of the U.S. Const.

159.     Further then, the Defendants' deliberate act of allowing Mr. Brown to brutally assault the Plaintiff was a direct and proximate result of the Plaintiff filing his grievances as stated previously.

160.     Moreover, it can be assumed with reasonable accuracy that there is a reasonable connection between the exercise of the Plaintiff's rights, as specifically described herein, and the allowance of the brutal assault on the Plaintiff.

161.     Based upon the Defendants' retaliation on the Plaintiff by allowing the brutal assault on the Plaintiff for the filing of multiple grievances on higher and lower level Defendants', as further satiated by the specific facts and omissions listed within this complaint, assuredly violates the Plaintiff's well-established right to be free from retaliation at the hands of the Defendants' pursuant to the Freedom of Expression Clause of the First Amendment of the U.S. Const. and Minn. Const. Art. 1 § 3.

162.     Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this

complaint and did nothing to prevent this conduct from occurring and actively

participated in such conduct, and further have failed to train and supervise the

subordinate Defendants' in this matter.

163.    The Plaintiff has been subject to and injured by theses alleged violations

and suffered damages as a direct and proximate result of Defendants' acts and

omissions as specifically set forth above.

164.    Furthermore, as further Defendants' MSOP and DHS have enacted and

follow policies, practices, procedures, whether verbally stated in whatever media

or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate

cause of the Plaintiff's injuries as specifically set forth above.

165.    Unless relief is granted, the Plaintiff will continue to be injured by and

suffer damages as a direct and proximate result of Defendants' acts and omissions

specifically set forth above.

## COUNT 11.

### DEFENDANTS' RETALIATION ON THE PLAINTIFF VIA ALLOWING THE BRUTAL SEXUAL ASSAULT ON THE PLAINTIFF TO OCCUR.

166.    The Plaintiff re-pleads and re-incorporates into this section in their entirety

as if they were reproduced here paragraphs 157 and 158.

167.    Further then, the Defendants' deliberate act of allowing Mr. Hammond to

brutally assault the Plaintiff was a direct and proximate result of the Plaintiff filing

his grievances as stated previously.

168.     Moreover, it can be assumed with reasonable accuracy that there is a reasonable connection between the exercise of the Plaintiff's rights, as specifically described herein, and the allowance of the brutal sexual assault on the Plaintiff.

169.     Based upon the Defendants' retaliation on the Plaintiff by allowing the brutal sexual assault on the Plaintiff for the filing of multiple grievances on higher and lower level Defendants', as further satiated by the specific facts and omissions listed within this complaint, assuredly violates the Plaintiff's well-established right to be free from retaliation at the hands of the Defendants' pursuant to the Freedom of Expression Clause of the First Amendment of the U.S. Const. and Minn. Const. Art. 1 § 3.

170.     Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

171.     The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

172.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media

or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

173.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## COUNT 12.

### DEFENDANTS' RETALIATION AGAINST THE PLAINTIFF.

174.     The First Amendment's Freedom of Expression Clause protects the Plaintiff from retaliatory acts at the hands of the Defendants'.

175.     Further, even if this Honorable Court is supposed to review retaliation claims diligently, as it relates to this present matter, the Plaintiff was clearly and patently retaliated against by the Defendants'.

176.     Further, the Minnesota Constitution also grants additional protections under the same.

177.     As stated by the specific acts and omissions set forth above, the Plaintiff was engaged in the filing of grievances against the Defendants', when the Defendants' became aware of such.

178.     The same day that the Defendants' became blatantly aware of such, the Defendants' issued me a BER and which was purportedly for "threatening others".

179.    Due to the adverse actions of the Defendants' as specifically set forth herein, the Plaintiff, being a person of average intelligence, was chilled from any further exercise of his rights.

180.    Furthermore, the courts have stated that, with regards to the casual connection element, circumstantial evidence can be sufficient to show a causal connection between the protected right and the adverse actions taken.

181.    In that it is patently clear, that by the Defendants' own actions of taking harsh adverse actions and the Plaintiff being subsequently chilled by the adverse actions, as specifically set forth herein, the Defendants' have violated the Plaintiff's well-established right to be free from retaliatory actions for exercise of his rights pursuant to the Freedom of Expression Clause of the First Amendment of the U.S. Const. and Art. 1 § 3 of the Minn. Const.

182.    Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

183.    The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

184.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

185.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### f. *Freedom of Expression Claims.*

## COUNT 13.

### DEFENDANTS' CENSORSHIP OF THE PLAINTIFF'S FREE SPEECH.

186.     The First Amendment, Freedom of Expression Clause of the U.S. Const. infers a right to be free to censorship of speech from the Defendants.

187.     In that, the Plaintiff, as stated, was engaged in free speech within a mediated session and the Defendants' stated and tried to quash the Plaintiff's free speech by stating that "I was frustrated with Mr. Brown and I didn't want to see him again" in the context of speaking about the assault that happened on the Plaintiff. In that, the Plaintiff stated that he was stating what he stated, not as a threat but to keep both him and Mr. Brown safe from harm.

188.     Thus, with no threats being made, the Plaintiff clearly exercised speech with was well within the protection of the U.S. Const.

189.     Thus being the case, the Defendants' censorship of the Plaintiff's freedom

of speech, as stated herein by the specific acts and omissions listed within this

complaint, violates the Plaintiff's well-established right to be free from censorship

of free speech being protected by the U.S. Const. pursuant to the Freedom of

Expression Clause of the U.S. Const. and the same under the Minn. Const. Art. 1 §

3.

190.     Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine

Hebert, Berg, Moser, and Doe #2, in their individual as well as their official

capacity, where each aware of the policies and practices that where implemented

at MSOP that where relevant to the specific acts and omissions listed within this

complaint and did nothing to prevent this conduct from occurring and actively

participated in such conduct, and further have failed to train and supervise the

subordinate Defendants' in this matter.

191.     The Plaintiff has been subject to and injured by theses alleged violations

and suffered damages as a direct and proximate result of Defendants' acts and

omissions as specifically set forth above.

192.     Furthermore, as further  Defendants' MSOP and DHS have enacted and

follow policies, practices, procedures, whether verbally stated in whatever media

or non-verbally stated by the natural Defendants' themselves and/or any person(s)

acting in concert, which have contributed and/or are the direct and proximate

cause of the Plaintiff's injuries as specifically set forth above.

193.    Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### g. *Conspiracy Claims.*

## COUNT 14.

### DEFENDANTS' CIVIL CONSPIRACY AGAINST THE PLAINTIFF TO ALLOW THE PLAINTIFF TO BE BRUTALLY ASSAULTED.

194.    Pursuant to 42 U.S.C. § 1985, the Plaintiff has a well-respected and known right to be protected from conspiracies to interfere with civil rights.

195.    It can be proven by circumstantial evidence that the Defendants' conspired, in a meeting of the minds to have the Plaintiff assaulted and/or to allow such a brutal assault to undertake.

196.    The purpose of the conspiracy at issue by the Defendants' to have the Plaintiff brutally assaulted by Mr. Brown was indeed to purposely deprive the Plaintiff of his civil rights.

197.    The actual assault by Mr. Brown and the failure of the Defendants' to remedy the risk to the Plaintiff was undoubtedly an act in furtherance of the conspiracy currently at issue.

198.    Patently, as the Plaintiff has satiated earlier in this complaint via the specific acts and omissions listed herein, the Plaintiff has been injured as a direct and proximate cause of the Defendants' conspiracy.

199.     Thus, the Defendants' by conspiring to have the Plaintiff brutally assaulted by Mr. Brown, as satiated by the specific acts and omissions listed herein this complaint, the Defendants' have further violated the Plaintiff's well-established right to be protected from civil conspiracies in violation of 42 U.S.C. § 1985(3).

200.     Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

201.     The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

202.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

203.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## COUNT 15.

### DEFENDANTS' CIVIL CONSPIRACY AGAINST THE PLAINTIFF TO ALLOW THE PLAINTIFF TO BE BRUTALLY SEXUALLY ASSAULTED.

204.     The Plaintiff hereby re-pleads and re-incorporates in its entirety, paragraph 132 of this complaint as if it were re-iterated here in their entirety.

205.     It can be proven by circumstantial evidence that the Defendants' conspired, in a meeting of the minds to have the Plaintiff sexually assaulted and/or to allow such a brutal sexual assault to undertake.

206.     The purpose of the conspiracy at issue by the Defendants' to have the Plaintiff brutally sexually assaulted by Mr. Hammond was indeed to purposely deprive the Plaintiff of his civil rights.

207.     The actual sexual assault by Mr. Brown and the failure of the Defendants' to remedy the risk to the Plaintiff was undoubtedly an act in furtherance of the conspiracy currently at issue.

208.     Patently, as the Plaintiff has satiated earlier in this complaint via the specific acts and omissions listed herein, the Plaintiff has been injured as a direct and proximate cause of the Defendants' conspiracy.

209.     Thus, the Defendants' by conspiring to have the Plaintiff brutally sexually assaulted by Mr. Brown, as satiated by the specific acts and omissions listed herein this complaint, the Defendants' have further violated the Plaintiff's well-established right to be protected from civil conspiracies in violation of 42 U.S.C. § 1985(3).

210.     Defendants including but not limited to, Jesson, Doe #1, Johnston, Jannine Hebert, Berg, Moser, and Doe #2, in their individual as well as their official capacity, where each aware of the policies and practices that where implemented at MSOP that where relevant to the specific acts and omissions listed within this complaint and did nothing to prevent this conduct from occurring and actively participated in such conduct, and further have failed to train and supervise the subordinate Defendants' in this matter.

211.     The Plaintiff has been subject to and injured by theses alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.

212.     Furthermore, as further  Defendants' MSOP and DHS have enacted and follow policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants' themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above.

213.     Unless relief is granted, the Plaintiff will continue to be injured by and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

B. *STATUTORY TORT LAW CLAIMS.*

214.     It is well-established common law amongst the courts that, with respect to statutory tort claims, whether federal and/or state, apply the doctrine of respondeat superior,   which   establishes   that   liability   of   the   supervisory   Defendants'

automatically   attaches   for   the   wrongs   of   their   subordinate

employees'/Defendants'.[4] Therefore it is unnecessary for the Plaintiff to

supervisor liability.

### a. *Intentional and Negligent Infliction of Emotional Distress Claims.*

### COUNT 16.

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS. (ASSAULT)

215.    The Defendants actions in the present matter, as stated by the specific acts

and omissions listed in this matter, where obviously intentional as they were

deliberately indifferent to an actual physical and sexual assault that happened to

the Plaintiff via Mr. Brown and Mr. Hammond.

216.    As it is in this matter and as the courts have already deemed, a brutal

physical assault and sexual assault on the Plaintiff, obviously offends the general

standards of decency and morality, as they are both also criminal offences.

217.    There is a casual connection between the Defendants' conduct and the

emotional distress that the Plaintiff endured.

218.    The Plaintiff's emotional distress, suffered in this matter by the Plaintiff

from the Defendants' conduct was severe.

219.    Surely then, since the Defendants' where deliberately indifferent to the fact

that he was physically and sexually assaulted by Mr. Brown and Mr. Hammond,

indeed he has met the threshold showing that the conduct was "outrageous and

---

[4] Oklahoma City v. Tuttle, 85 LED2D 791, 471 US 808 (Decided June 3rd, 1985); Melady v. South St. Paul Live Stock Exchange, 142 Minn. 194 (April 11th, 1919) (Both stating that the doctrine of respondeat supervisor applies to statutory tort claims.); *See also* Frieler v. Carlson Mktg. Group, 751 N.W.2d 558 (May 30th, 2008) (Defines what the doctrine of respondeat superior is.)

intolerable" conduct that offends general accepted standards of morality and decency as the conduct giving rise to the emotional distress was so extreme in character, and so extreme in degree (as the Plaintiff suffered an actual brutal physical and sexual assault), as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

220.     Thus, since both a brutal sexual assault and a brutal physical assault is against the law, in which carries hefty criminal penalties, it is undoubtedly not a mere insult, indignity, threat, annoyance, petty oppression or other triviality and thus rises to a level in which is intolerable in a civilized community.

221.     Thus, since the Defendants' have failed to estop, and where deliberately indifferent to, the brutal sexual and physical assault on the Plaintiff which as a direct and proximate result, the Plaintiff has suffered severe emotional and mental distress from, as stated within the specific facts and omissions stated in this complaint, the Defendants' have violated the Plaintiff's well-established right to be free from the intentional and negligent infliction of emotional distress.

**b.  _Negligence Claims._**

### COUNT 17.

### DEFENDANTS' NEGLIGENCE IN THE DUTIES OWED TO THE PLAINTIFF TO PREVENT ASSAULT.

222.     Being that the Plaintiff has an established "special relationship" with the Defendants' via being detained of his freedoms in the MSOP which has taken his

ability to defend himself, the Defendants' have an established duty to protect the Plaintiff from a risk of serious harm from a brutal assault.

223.     Further, it is an unassailable fact that that duty was breached when, as satiated earlier, the Defendants failed to provide for the reasonable safety of the Plaintiff and further breached when the Defendants' allowed the Plaintiff to be brutally assaulted.

224.     The Plaintiff's injuries, as stated by the specific facts and omissions of this complaint, where and are currently the direct and proximate cause of the Defendants' breach of duty/negligence.

225.     As satiated in this complaint, the Plaintiff has sustained serious injuries, as specifically stated by the acts and omissions listed in this complaint, due to the Defendants' breach of duty/negligence.

226.     Thus, for the Defendants' negligence in failing to protect the Plaintiff from a substantial risk of harm via a brutal assault on the Plaintiff, as stated by the specific acts and omissions listed in this complaint, violates the Plaintiff's well established statutory tort right to be free from negligence.

## COUNT 18.

### DEFENDANTS' NEGLIGENCE IN THE DUTIES OWED TO THE PLAINTIFF TO PREVENT SEXUAL ASSAULT.

227.     Being that the Plaintiff has an established "special relationship" with the Defendants' via being detained of his freedoms in the MSOP which has taken his

ability to defend himself, the Defendants' have an established duty to protect the Plaintiff from a risk of serious harm from a brutal Sexual assault.

228.    Further, it is an unassailable fact that that duty was breached when, as satiated earlier, the Defendants failed to provide for the reasonable safety of the Plaintiff and further breached when the Defendants' allowed the Plaintiff to be brutally sexually assaulted.

229.    The Plaintiff's injuries, as stated by the specific facts and omissions of this complaint, where and are currently the direct and proximate cause of the Defendants' breach of duty/negligence.

230.    As satiated in this complaint, the Plaintiff has sustained serious injuries, as specifically stated by the acts and omissions listed in this complaint, due to the Defendants' breach of duty/negligence.

231.    Thus, for the Defendants' negligence in failing to protect the Plaintiff from a substantial risk of harm via a brutal sexual assault on the Plaintiff, as stated by the specific acts and omissions listed in this complaint, violates the Plaintiff's well established statutory tort right to be free from negligence.

   c.  *Defamation of Character.*

### COUNT 19.

### DEFENDANTS' DEFAMING THE PLAINTIFF.

232.    The Plaintiff has a statutory right to be free from defamation of character at the hands of the Defendants'.

233.     In defamation of character, specifically in pleading the defamatory

statements element, since the courts have stated that they need be only

communications which are false and so tend to change the minds of third parties

about the reputation of the individual/subject and so to damage it (in the present

case, the Plaintiff's reputation), it would be an undeniable fact that the defamatory

statements could be either verbal and/or non-verbal.

234.     In that, by the non-verbal act of placing Mr. Brown and Mr. Hammond

back into the same unit as the Plaintiff, as described by the acts and omissions

listed herewithin this complaint, it would change the mind, negatively, towards the

Plaintiff's reputation, as the third parties, the clients within the facility, would

think that the Plaintiff tried to set up Mr. Brown and Mr. Hammond.

235.     Further, it is surely falsely recorded by the Defendants, which files are

accessible to, *inter alia,* the justice system, outside medical providers, lawyers,

etc… for different purposes, that Mr. Brown and Mr. Hammond did not do

anything wrong, which would be false and so tend to change the opinions and ruin

the Plaintiff's reputation.

236.     Surely then it can be said with a reasonable sense of accuracy that the

Defendants' acted with negligence regarding the truth of the verbal and non-verbal

statements, as specifically plead by the specific acts and omissions listed herein.

237.     Thus, since the Defendants' have spread non-verbal and verbal published

information about the Plaintiff in regards to the brutal sexual and physical assault

on the Plaintiff at the hands of Mr. Hammond and Mr. Brown, as stated by the

specific acts and omissions listed within this complaint, the Defendants' have and

continue to violate the Plaintiff's well-established statutory tort law right of

protection from Defamation.

### d. *Reprisal.*

### COUNT 20.

### DEFENDANTS' REPRISAL AGAINST THE PLAINTIFF.

238.     The Minnesota Supreme Court has opined that reprisal consists of *"any*

*form* of intimidation, retaliation, or harassment.[5]

239.     Since the Minnesota Supreme Court has opined that reprisal consists of *any*

form of intimidation, retaliation, or harassment surely then if any of those exists in

any circumstances, it is said to be reprisal.

240.     As the Plaintiff has iterated above in the complaint, he was engaging in the

act of statutorily and constitutionally protected activity at the time of the

Defendants' reprisal via filing of grievances with this Honorable Court, which,

given its' importance in today's society, is surely statutorily protected conduct for

the Plaintiff to perform.

241.     Additionally, as also previously stated, the Defendants' subsequently took

adversarial actions of giving the Plaintiff a BER and accusing him of the very

---

[5] It is understood that in the present case presented the Parties shared an employee-employer relationship, however, this amounts to a "special relationship" broken down into its most general terms. Therefore, it is eminent if a special relationship of "employee-employer" is applicable to the law then Due Process and Equal Protection would state that any "Special relationship is applicable under the respective law. Thus, the Plaintiff being detained, would indeed meet this "special relationship" standard.

serious accusations of threatening others and basing their conclusions off of hearsay, and even hearsay within hearsay.

242.  In showing a causal connection between the protected activity and reprisal, the Plaintiff can rely on solely "circumstantial evidence".

243.  There is a casual connection between the (1) the Plaintiff's exercise of his rights to file for redress of grievances against the Defendants', and (2) the Defendants' reprisal actions of giving the Plaintiff a BER.

244.  Thus, based on the fact that the Defendants' clearly and patently displayed and performed reprisal on the Plaintiff for the exercise of the Plaintiff's rights that were otherwise statutorily protected as further specifically set forth by the specific acts and omissions listed within this complaint, the Defendants' clearly violated the Plaintiff's well-established right to be protected from Reprisal.

## C. PERSONAL CLAIMS AGAINST MR. BROWN AND MR. HAMMOND.

245.  The following claims are solely against Defendants' Brown and Hammond in their individual capacities and are further not state or federal actors and instead where private citizens.

   a.  *ASSAULT AND BATTERY.*

## COUNT 21.

## ASSAULT AND BATTERY BY MR. BROWN AND MR. HAMMOND ON THE PLAINTIFF.

246.  Defendants' Brown and Hammond physically and sexually assaulted and verbally threatened to do so the Plaintiff, as stated by the specific acts and omissions listed herein.

247.    Thus, from the actions of Defendants' Brown and Hammond physically and sexually assaulting  and verbally threatening to do so against the Plaintiff, as specifically plead by the specific acts and omissions herein, the Defendants' have violated the Plaintiff's statutory right to be free from Assault and Battery.

b. *Intentional and Negligent Infliction of Emotional Distress.*

### COUNT 22.

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UPON THE PLAINTIFF.

248.    Surely Defendants' Brown and Hammond's conduct of physically and sexually assaulting the Plaintiff, the conduct is surely said to be extreme and outrageous, as it passes the boundaries of decency and is utterly intolerable to the civilized community. Further, it would definitely lead the average member of the community to exclaim "outrageous!".

249.    Further, it is safe to say that the acts of sexual assault and physical assault are acts that, by today's standards of decency, are not only immoral however are also intolerable to the civilized community, as both sexual assault and physical assault are illegal.

250.    Thus, it is an unassailable fact that by Defendant Brown's brutal and unprovoked physical assault on the Plaintiff and by Mr. Hammond's brutal sexual assault on the Plaintiff, as described by the specific acts and omissions listed herewithin this complaint, amounts to conduct that is utterly intolerable to the

civilized community of today, and would definitely lead to the average member of

the community to exclaim "outrageous!".

251.　　It is further undoubted, that the actions of Defendants' Brown and

Hammond where intentional, as both respective Defendants' actually committed

the act of actually physically and sexually assaulting the Plaintiff, as specifically

stated within the specific acts and omissions listed within this complaint.

252.　　Defendants' Brown and Hammond intentional conduct of brutally

physically and sexually assaulting the Plaintiff caused the Plaintiff to undergo

serious injuries of emotional duress, as further stated by the specific acts and

omissions listed within this complaint.

253.　　Thus, because Defendants' Brown and Hammond intentionally and

negligently inflicted emotional distress upon the Plaintiff, as specifically stated

herewithin this complaint by the specific acts and omissions listed herein,

Defendants' Brown and Hammond intentionally and negligently violated the

Plaintiff's statutory tort right to be free from the Intentional and Negligent

Infliction of Emotional Distress.

c. *False Imprisonment.*

## COUNT 23.

### FALSE IMPRISONMENT OF THE PLAINTIFF VIA DEFENDANTS' BROWN AND HAMMOND.

254.　　Defendants' Brown and Hammond, in the commission of the brutal

physical and sexual assault on the Plaintiff, provided no avenue of escape for the

Plaintiff.

255.    Thus, surely Defendants' Brown and Hammond, by their own actions complained of herein by the specific acts and omissions stated herein, have committed acts that where intentionally meant to falsely confine/imprison the Plaintiff.

256.    Defendants' Brown and Hammond's actions, as further stated by the specific acts and omissions listed herein this complaint, where meant to confine the Plaintiff.

257.    The Plaintiff was aware that Defendants' Brown and Hammond's actions as, further stated by the specific acts and omissions listed herein this complaint, where meant to confine him.

258.    Thus, since Defendants' Brown and Hammond's actions, as further satiated and stated by the specific acts and omissions listed herein this complaint, where further meant to intentionally falsely confine/imprison the Plaintiff, Defendants' Brown and Hammond's respective actions clearly violates the Plaintiff's well-established right to be free from being Falsely Imprisoned.

## VIII. PRAYER FOR RELIEF.

*WHEREFORE,* THE ABOVE NAMED Plaintiff hereby prays this Honorable Court for an order granting in favor of the Plaintiff in the following:

A. Issue a declaratory judgment stating that:

1. Each violation that this Honorable Court finds violates the Plaintiff's rights pursuant to state and/or federal laws, constitution, etc...;

B. Issue an injunction ordering the respective and authorized Defendants', or their agents to or any persons acting in concert with them to or refrain from:

1. Expunge BER No. 1,569 (and bearing the Incident Report No. 2013011379) and any other documentation, either electronically or otherwise produced, either accompanying, making reference to or affixed to BER No. 1,569 (and bearing the Incident Report No. 2013011379) or any same or similar situation in regards to BER No. 1,569 (and bearing the Incident Report No. 2013011379) from any and all of the Plaintiff's records at the MSOP facility;

2. Expunge any defamatory/corrupting case notes or similarly titled/named documentation from any of the files kept on the Plaintiff, either in electronically produced or otherwise format in regards to any of the specific acts and omissions listed in this complaint;

3. Reinstate the Plaintiff in his vocational programming as if he was never terminated from it;

4. House Mr. Hammond and Mr. Brown in the Omega III unit or other alternatively structured and programmed unit at the MSOP – ML facility, with the exception that the Defendants' shall not place Mr. Hammond and/or Mr. Brown on the following units being located at the MSOP-ML facility campus/grounds: unit 1-C, Chi, Delta, Nova, and/or Alfa at no time during the detention of Mr. Hammond and Mr. Brown;

5. Provide no contact, regardless of party extent (e.g. first, second, third, supervised, etc...), between the Plaintiff, Mr. Hammond, and Mr. Brown, either verbal or written;

6. Provide the Plaintiff, forthwith, with the adequate medical needs consistent with today's standards of care for the Plaintiff's serious medical needs and as this Honorable Court sees fit;

7. To immediately start the charge process to convict Mr. Hammond, and Mr. Brown of the respective crimes as this Honorable Court sees fit;

8. To allow the Plaintiff to speak freely and express his opinions in regards to the incident with Mr. Brown and Mr. Hammond without fear of reprisal from the Defendants'.

9. To prohibit any further future actions/conduct as specifically set forth herein that are deemed to violate the state and federal laws, constitutions, etc....

10. To provide the Plaintiff with ongoing psychiatric counseling by a party not related to the Defendants 'of the Plaintiff's choosing and to transport the Plaintiff upon the Plaintiff's request forthwith to the psychiatrist, psychologist, or any other psychiatric professional. This is to be paid for in its entirety by the Defendants', the Defendants' shall provide the Plaintiff with a comprehensive list of psychiatric medical providers in the State of Minnesota and their subsequent specialties along with the *cost per diam*, etc...;

11. Provide, forthwith, the Plaintiff individualized licensed Sex Offender (SO) and Chemical Dependency (CD) treatment programs by a licensed treatment

provider of the Plaintiff's choosing on an outpatient basis to be paid for by the Defendants and to be provided transportation to by the Defendants' at the Plaintiff's request;[6]

12. Purchase the Plaintiff a personal gaming system along with any games of his choosing and allow for personal ownership in his room for the duration of his stay within the MSOP facility and/or any other program operated and/or affiliated with MSOP, being CPS, MSI, etc.... Further, allow the Plaintiff to get new video games and any accessories for the respective gamming system throughout the entirety of his stay within the MSOP facility and/or any other programs operated and/or affiliated with MSOP, being CPS, MSI, etc...;[7]

13. Expunge the Vocational Treatment Notice (NTN) dated 10/25/2013 that refers to any violations while the Plaintiff was performing his vocational programming tasks either that day or previous to that day;

14. Provide a single room for the Plaintiff in the unit he is in currently or to be in in the future for the duration of the Plaintiff's choosing. The Plaintiff can change his mind on this single room by written permission to the qualified authority at any time with no questions asked and/or any approval, permission, etc... sought by the Plaintiff, and may rescind that request at any time by written request to the qualified authority at any time with no questions asked or approval, permission, etc... sought by the Plaintiff. Further, the Defendants'

---

[6] This form of remedy has been provided to other cases involving clients within the MSOP program for sexual and physical assaults. *See cases such as* Goldhammer, etc....
[7] See FN. 6.

must agree on and provide the name of the respective authority to the Plaintiff forthwith;

C. Award nominal damages as it is deemed just and necessary for each violation found herein this complaint[8];

D. Award compensatory damages against each Defendant severally or jointly;

E. Award punitive damages against each Defendant severally or jointly ;

F. Grant such other relief as it may appear that Plaintiff is entitled.

Dated: <u>Saturday, October 26, 2013 at 2:14:48 PM</u>

Respectfully Submitted:

Eric Michael Sorenson
1111 Highway 73
Moose Lake, Minnesota 55767
**Plaintiff, *Pro Se***

## IX.   JURY DEMAND.

Pursuant to FRCP 38(b), Plaintiff(s) demand a trial by jury on all issues so triable.

## X.   COMPLAINT VERIFICATION.

The Plaintiff, Eric Michael Sorenson, dose hereby state and certify under the penalties of perjury pursuant to 18 U.S.C.S. 1621, that all of the aforementioned statements are true and correct to the best of his ability and knowledge, with the

---

[8] The Plaintiff respectfully chooses not to apply a monetary ceiling to this matter at this time for all monetary reliefs listed herein, as this will be determined as such relevant time.

exception to those aforementioned statements made under information and belief and as to those I believe them to be correct based upon information and belief.

Dated: Saturday, October 26, 2013 at 2:14:48 PM

Respectfully Submitted:

Eric Michael Sorenson
1111 Highway 73
Moose Lake, Minnesota 55767
**Plaintiff, *Pro Se***

 **Eric Sorenson**
1111 Highway 73
Moose Lake, MN 55767 

TO:   U.S. District Courthouse
     U.S. District Court
     C/O: Richard Slutten,
       Court Administrator
     300 South Fourth Street
     Minneapolis, MN 55415

Re:   <u>Filing of federal civil rights 42 U.S.C. § 1983 complaint</u> *(New Matter)*

DATE:  Saturday, October 26, 2013 at 2:14:48 PM

Dear Slutten, Court Administrator:

Please find enclosed for filing in a new matter the forms and complaint authorized by 42 U.S.C. § 1983.

Please feel free to contact me via the above address with any questions and/or concerns.

Thank you for your time.

Sincerely,

Eric Michael Sorenson
1111 Highway 73
Moose Lake, MN 55767
**Plaintiff, *Pro Se***

Page 1 of 1

Mailed From A Secure
Treatment Facility

Priority Mail
ComBasPrice



U.S. POSTAGE ›› PITNEY BOWES

ZIP 55767          $ 005.32⁰
02 1W
0001383919 OCT 28 2013

Eric Michael Sorenson
1111 Highway 73
Moose Lake, MN 55767



**Get All That's Coming To You**
Please notify the sender of
your complete and correct
address.

gal

nd

ive

urday, October 26, 2013 (      )



U.S. District Courthouse
U.S. District Court
C/O: Richard Slutten,
        Court Administrator
300 South Fourth Street
Minneapolis, MN 55415



PRIORITY® MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107R, January 2008