UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eric Michael Sorenson,                                    Court File No. 13-cv-2958 (ADM/LIB)

    Plaintiff,

                  **ORDER AND**
v.                                              **REPORT AND RECOMMENDATION**

Minnesota Department of Human Services,
et al.,

    Defendants.

---

   This matter comes before the undersigned United States Magistrate Judge upon the State Defendants' Motion to Dismiss, [Docket No. 28]; Plaintiff's Motion for Partial Default Judgment, [Docket No. 57]; Plaintiff's Motion for Partial Default Judgment, [Docket No. 80]; Plaintiff's Motion to Consider the Defendants' Current Motion to Dismiss Moot or Denied, [Docket No. 88]; Plaintiff's Motion for Leave to File an Amended Complaint, [Docket No. 92]; the State Defendants' Partial Motion to Dismiss Plaintiff's Supplemental Complaint, [Docket No. 100]; and Plaintiff's Motion to Amend Supplemental Complaint as of Right or Freely, [Docket No. 124]. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 72.1.

   For reasons articulated herein, the Court orders that Plaintiff's Motion for Leave to File an Amended Complaint, [Docket No. 92], is **GRANTED**; and that Plaintiff's Motion to Amend Supplemental Complaint as of Right or Freely, [Docket No. 124], is **GRANTED**.

   For the reasons articulated herein, the Court recommends that the State Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED** in its entirety; that Plaintiff's Motion for Partial Default Judgment, [Docket No. 57], be **DENIED as moot**; that Plaintiff's Motion for

Partial Default Judgment, [Docket No. 80], be **DENIED as moot**; that Plaintiff's Motion to Consider the Defendants' Current Motion to Dismiss Moot or Denied, [Docket No. 88], be **DENIED**; and that the State Defendants' Partial Motion to Dismiss Plaintiff's Supplemental Complaint, [Docket No. 100], be **GRANTED** in its entirety.

## I.    STATEMENT OF ALLEGED FACTS

Plaintiff Eric Michael Sorenson ("Plaintiff"), a patient civilly committed in the Minnesota Sex Offender Program ("MSOP"), proceeding *pro se*, initiated the present lawsuit on or about October 29, 2013, naming as Defendants numerous departments and employees of the State of Minnesota (collectively, the "State Defendants") along with two civilly committed MSOP patients. (Compl. [Docket No. 1]). On March 23, 2014, Plaintiff filed a Supplemental Complaint, [Docket No. 70], alleging additional claims and implicating additional employees of the State of Minnesota. Accordingly, Plaintiff sets forth the allegations and claims at issue in the present case via two separate vehicles: the original Complaint, [Docket No. 1], and a Supplemental Complaint, [Docket No. 70].

### A.    Plaintiff's Complaint

On or about October 29, 2013, Plaintiff filed his initial Complaint in the present federal civil rights action, demanding relief pursuant to 42 U.S.C. § 1983. Plaintiff's original Complaint, [Docket No. 1], alleges approximately twenty-three (23) counts against numerous Defendants arising out of two separate incidents of assault, alleged to have occurred during Plaintiff's civil commitment at MSOP. Plaintiff generally alleges that the named State Defendants,[1] sued in both

---

[1] Plaintiff's original Complaint specifically names the following State Defendants: the Minnesota Department of Human Services ("MDHS"); the Minnesota Sex Offender Program (MSOP); Lucinda Jesson, Commissioner of the DHS (¶ 8); Nancy Johnston, "CEO of MSOP" (¶ 9); Jannine Hebert, Executive Clinical Director (¶ 10); James Berg, Assistant Clinical Director (¶ 11); Kevin Moser, Facility Director (¶ 12); Tom Lundquist, Clinical Director (¶ 13); Tara Osborne, Complex Unit 1-D Clinical Supervisor (¶ 14); Rob Rose, Complex Unit 1-D Unit Director (¶ 15); Jennifer Abson, Unit 1-D Unit Lead (¶ 16); Al Jennings, "Rover" Security Counselor (¶ 17); David Paulson, Medical Director for MSOP (¶ 18); Scott Sutton, Health Services Director for MSOP (¶ 19); James Michael Olson,

their individual and official capacities, "[f]ailed to protect that Plaintiff from a serious risk of harm to a brutal sexual and physical assault at the hands of other clients [detained at MSOP]." (Id. ¶¶ 2a, 31). Plaintiff alleges one count of deliberate indifference to "an extreme risk of physical assault," in violation of the Due Process Clause of the Constitution and the Minnesota state constitution; one count of deliberate indifference to the "risk of brutal sexual assault," in violation of the Due Process Clause of the Constitution and the Minnesota state constitution; one count of failure to provide adequate procedural due process; one count of deliberate indifference to Plaintiff's serious medical needs following assault, in violation of the Due Process Clause of the Constitution and the Minnesota state constitution; one count of deliberate indifference to Plaintiff's serious medical needs following sexual assault, in violation of the Due Process Clause of the Constitution and the Minnesota state constitution; four counts of failure to protect Plaintiff, in violation of the Equal Protection Clause of the Constitution and the Minnesota state constitution; three counts of retaliation, in violation of the First Amendment and equitable provisions of the Minnesota state constitution; one count of "censorship," in violation of the First Amendment and equitable provisions of the Minnesota state constitution; two counts of conspiracy, pursuant to 42 U.S.C. § 1985; one count of negligent and/or intentional infliction of emotional distress; two counts of negligence; one count of defamation; and one count of reprisal. (Id. at Counts 1-20). Additionally, Plaintiff alleges one count of assault and battery; one count of intentional and negligent infliction of emotional distress; and one count of false imprisonment against fellow MSOP patients Joel Brown and Jeremy Hammond. (Id. at Counts 21-23). Plaintiff appears to generally allege all claims save Counts 21, 22, and 23 against all State Defendants collectively.

---

RN (¶ 20); Marie Skalko, RN Administrative Supervisor (¶ 21); and Troy Basaraba, Security Director (¶ 22). (Compl. [Docket No. 1]). Plaintiff also names (but fails to specifically identify) several MSOP "Doe" Defendants. (Id. ¶¶ 25-29).

As mentioned, the underlying facts alleged in Plaintiff's original Complaint in support of Plaintiff's 23 claims revolve around two alleged assaults. First, Plaintiff alleges that on or about October 18, 2013, at approximately 11:00 p.m., MSOP patient Joel Brown physically assaulted Plaintiff. (Id. ¶¶ 32-33). Plaintiff alleges that the State Defendants, collectively, are to blame for the assault due to their "deliberate indifference" and their hand in placing Defendant Brown and Plaintiff in the same room. (Id. ¶ 32, 34). Plaintiff generally alleges that he informed the State Defendants, collectively, that he and Defendant Brown were "not getting along" prior to the assault, that Plaintiff and Defendant Brown had attempted to resolve their differences via "staff facilitated mediated sessions," and that these sessions were ultimately unproductive. (Id. ¶¶ 35-37). Plaintiff alleges that the State Defendants, collectively, denied Plaintiff's request(s) to "remove himself" from Defendant Brown and that the State Defendants, collectively, should have known that Plaintiff was at risk of being assaulted, "as Mr. Brown has had an excessive history of physical violence . . . ." (Id. ¶¶ 39, 41). Plaintiff attempts to document the State Defendants' alleged deliberate indifference to Plaintiff's risk of assault by alleging that they had made comments to Plaintiff including, "you guys seem to be pissed off at each other because you both threatened each other." (Id. ¶ 42).

In connection with this first alleged underlying assault, Plaintiff asserts that the Health Services Department at MSOP failed to adequately examine Plaintiff for a concussion following the assault and failed to provide Plaintiff with adequate medical care generally. (Id. ¶ 46). Plaintiff further alleges that the State Defendants, collectively, retaliated against Plaintiff when he threatened to sue the State Defendants as a result of the underlying assault, as evidenced by the fact that the State Defendants issued Plaintiff a "Major Behavioral Expectations Report (BER)" stating that Plaintiff had been threatening others. (Id. ¶¶ 48, 50).

With regard to the second alleged underlying assault, Plaintiff asserts that Defendant Jeremy Hammond, also civilly committed at MSOP, sexually assaulted Plaintiff sometime in 2012. (Id. ¶ 54). Plaintiff again blames the State Defendants, collectively, for their deliberate indifference to Plaintiff's risk of sexual assault. (Id.) Plaintiff alleges that he informed the State Defendants that, prior to the alleged assault, Defendant Hammond had threated to sexually assault Plaintiff. (Id. ¶ 56). Plaintiff alleges that after seeing a doctor outside of MSOP following the reported sexual assault, the State Defendants received "orders" to test Plaintiff for sexually transmitted diseases; however, according to Plaintiff, the State Defendants claimed to have lost the medical orders and Plaintiff did not receive the prescribed testing for sexually transmitted diseases. (Id. ¶¶ 61-63).

Plaintiff generally alleges that the State Defendants are collectively responsible for Plaintiff's alleged injuries, and that the State Defendants have generally "enacted and follow[ed] policies, practices, procedures, whether verbally stated in whatever media or non-verbally stated by the natural Defendants themselves and/or any person(s) acting in concert, which have contributed and/or are the direct and proximate cause of the Plaintiff's injuries as specifically set forth above." (Id. ¶¶ 78, 79, 91, 92, 100, 101, 110, 111, 122, 123, 132, 133, 140, 141, 148, 149, 154, 155, 163, 164, 171, 172, 183, 184, 191, 192, 201, 202, 211, 212). Additionally, Plaintiff generally alleges that the "supervisory" State Defendants – specifically, Defendants Jesson, Johnston, Hebert, Berg, and Moser – failed to adequately train their respective subordinates. (Id. ¶¶ 77, 90, 99, 109, 121, 131, 139, 147, 153, 162, 170, 182, 190, 200, 210).

## B.    Plaintiff's Supplemental Complaint

In his Supplemental Complaint, Plaintiff alleges that since filing his original Complaint, [Docket No. 1], the State Defendants have committed additional retaliatory actions against

Plaintiff, in violation of Plaintiff's constitutional rights; restricted Plaintiff's vocational opportunities within MSOP; and have continued to fail to protect Plaintiff from harm. (Supp. Compl. [Docket No. 70]).

Plaintiff alleges additional supplemental claims against eight additional State Defendants, including the 2012 to present MSOP OSI Department and Respective OSI Employees ("Doe #5"); MSOP employee Todd White; MSOP employee Ciara Macklanburg; MSOP employee Paul Christenson; MSOP employee Charlie Hoffman; MSOP employee Scott Benoit; MSOP employee Terry Kenisel; and "other Jane/John Does[.]" (Id. ¶ 17). Plaintiff sues each supplemental State Defendant in his or her official and individual capacities. (Id. ¶ 19).

Plaintiff's Supplemental Complaint further alleges that as a result of informing State Defendant Brewer-Ottom (identified in the caption of Plaintiff's original Complaint) of the present lawsuit and Plaintiff's claims against her, Defendant Brewer-Ottom was "very abrupt, rude and disrespectful" to Plaintiff and began removing shifts from Plaintiff's vocational programming schedule. (Id. ¶¶ 22-25). Plaintiff alleges that a connection exists, "through circumstantial evidence," between Defendant Brewer-Ottom's actions and Plaintiff's exercise of constitutionally protected rights, constituting unconstitutional retaliation. (Id. ¶ 30, Count I). Plaintiff alleges one count of retaliation against Defendants Brewer-Ottom, White, and Macklanburg, although the Supplemental Complaint is devoid of mention of any specific retaliatory action by either White or Macklanburg. (Id. at Count I). Plaintiff implicates Defendants Jesson, Johnston, Hebert, Berg, Moser, Christenson, Hoffman, Puffer, Benoit, and Kensiel in their supervisory roles as they were "aware of the policies and practices that [were] implemented at MSOP," did nothing to prevent the alleged retaliatory conduct, and "actively participated in such conduct." (Id. ¶ 54).

6

Second, Plaintiff alleges that Defendant Doe #5, of the institutional department allegedly responsible for handling violations of the law by MSOP patients, failed to meaningfully interview Plaintiff regarding the underlying assaults, in violation of Plaintiff's procedural and substantive due process rights. (Id. ¶¶ 34-35, Counts II & III). Plaintiff only generally alleges that Defendant Doe #5 failed to provide Plaintiff with adequate procedural and substantive due process. (Id. ¶¶ 61, 68). Again, Plaintiff implicates the involvement of supervisory Defendants Jesson, Johnston, Hebert, Berg, Moser, Christenson, Hoffman, Puffer, Benoit, and Kenisel for their awareness of MSOP policies, failure to intervene, and failure to adequately train and supervise "subordinate Defendants." (Id. ¶ 62).

Third, Plaintiff generally alleges conspiracy pursuant to 42 U.S.C. § 1985 by Defendants Doe #5, Macklanburg, White, Brewer-Ottom, "and the rest of the administrative Defendants," generally alleging an otherwise unspecified "meeting of the minds." (Id. ¶¶ 73-74, Count IV).

In Count V of Plaintiff's Supplemental Complaint, Plaintiff conclusorily alleges violations of the Americans with Disabilities Act and the Rehabilitation Act without including any specific allegations regarding the nature of such violations. (Id. ¶¶ 39-40). Plaintiff conclusorily states that he is a qualified person with a disability, (Id. ¶ 82), and he makes only a general reference to Defendants' removal of Plaintiff's vocational hours, (Id. ¶ 84). Again, Plaintiff implicates the supervisory subset of State Defendants and includes a general reference to unspecified MSOP policies and practices. (Id. ¶¶ 87, 88).

Plaintiff further alleges that he was subject to employment discrimination at the hands of the State Defendants upon losing his vocational placement. (Id. at Count VII).

Plaintiff also alleges various state law claims as a result of the facts alleged in the Supplemental Complaint, including negligent and intentional infliction of emotional distress,

(Count VI), defamation (Count VIII), breach of contract (Count IX), and negligence (Count X). Specifically with regard to his defamation claim, Plaintiff alleges that Defendants Brewer-Ottom, White, Macklanburg, and Doe #5 committed defamation against Plaintiff by publishing "information contained within the Vocational Treatment Memos that the Plaintiff received," which will allegedly have an unspecific negative impact on Plaintiff. (Id. ¶ 42, Count VIII). Plaintiff alleges that in so denying Plaintiff his requested vocational work, the State Defendants breached the contract between Plaintiff and Defendants. (Id. at Count IX).

Each of the present motions before the Court will be addressed in turn.

## II.   PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT, [DOCKET NO. 92]

Plaintiff moves the Court for an order granting Plaintiff leave to amend his original Complaint in the present case, [Docket No. 92].

### A.   Plaintiff's Proposed First Amended Complaint

By his proposed First Amended Complaint, [Docket No. 97], Plaintiff seeks to more clearly articulate that he brings the present suit against the named State Defendants in their official and individual capacities for (1) failure to protect Plaintiff from both a physical assault and a sexual assault; (2) failure to provide Plaintiff with adequate medical care following the subject assaults; (3) failure to provide "equal treatment" to Plaintiff both prior to and following the subject assaults; and (4) retaliatory action taken against Plaintiff. (Proposed First Amended Compl. [Docket No. 97], ¶ 2). Plaintiff's proposed First Amended Complaint incorporates additional, more specific factual allegations in support of his original 23 counts, although the nature of the claims themselves remains largely intact when compared to Plaintiff's original Complaint. (See [Docket No. 96]).

In addition to Plaintiff's additional factual allegations, Plaintiff's proposed First Amended Complaint identifies additional "Unknown and/or Doe" Defendants, including MSOP Health Services Department Staff; 2010 to present MSOP Transport Officers; 2010 to present MSOP Complex Unit 1-E Clinical Staff; 2010 to present MSOP Complex Unit 1-E Lead(s); and 2010 to present MSOP Behavioral Expectations Unit (BEU) Team. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 28-32). Plaintiff also alleges a general failure by each of the individually identified State Defendants to remedy his alleged grievances and a general failure to protect Plaintiff, seemingly as an attempt to sufficiently implicate the specific, individual involvement of each individually identified State Defendant. (Id. ¶¶ 8-23).

The specific factual allegations advanced by Plaintiff's proposed First Amended Complaint will be discussed in further detail in the Court's analysis of the State Defendants' Motion to Dismiss, [Docket No. 28]. See Section III, infra.

## B.    Standard of Review

Except where amendment is permitted as a matter of course, Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only with the opposing party's written consent or the court's leave, and Rule 15 instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," <u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 715 (8th Cir. 2008), the Court begins its review "with a presumption of liberality." <u>DeRoche v. All Am. Bottling Corp.</u>, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998).

### C.    Analysis

First and foremost, the State Defendants do not oppose Plaintiff's Motion for Leave to File an Amended Complaint, [Docket No. 92]. (Resp. Mem. [Docket No. 137], at 3). This alone encourages the Court to grant Plaintiff's motion. <u>See</u> Fed. R. Civ. P. 15(a)(2).

In addition to the fact that the State Defendants do not oppose Plaintiff's motion, Eighth Circuit jurisprudence provides that courts should consider motions to amend the pleadings prior to ruling on pending motions to dismiss. In <u>Pure Country, Inc. v. Sigma Chi Fraternity</u>, 312 F.2d 952 (8th Cir. 2002), the defendant moved to dismiss the plaintiff's complaint for failure to state a claim upon which relief may be granted. <u>Id.</u> at 955. While the motion to dismiss was pending, the plaintiff filed a motion to amend its pleading and add additional parties. <u>Id.</u> The district court granted the defendant's motion to dismiss and denied as moot the plaintiff's motion to amend. <u>Id.</u> On appeal, the Eighth Circuit reversed, writing:

> [T]he district court ignored Pure Country's motion to amend, granted Sigma Chi's motion to dismiss the original complaint, and then denied Pure Country's motion to amend the complaint as <u>moot</u>. That approach, as a procedural matter, was plainly erroneous. If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint. We therefore reverse the district court's denial of Pure Country's motion to amend the complaint, and we remand the matter to the district court with instructions to reconsider the motion under the discretionary standard asserted by Pure Country. In order to permit the district court to reconsider the motion to amend the complaint, we also vacate the district court's dismissal of the original complaint; however, we do so subject to the

10

>possibility that the claims in question may again be dismissed by
>the district court following its ruling on the motion to amend.

Id. at 956 (internal citations omitted). The Eighth Circuit held that it is procedural error to grant a

pending motion to dismiss, and subsequently dismiss a motion to amend the complaint as moot,

recommending, instead, that courts apply the Rule 15 discretionary standard and first weigh

motions to amend. Id.; Murrin v. Fischer, No. 07-cv-1295 (PJS/RLE), 2008 WL 540857 (D.

Minn. Feb. 25, 2008). Similarly, in Reinholdson v. Minnesota, No. 01-cv-1650 (RHK/JMM),

2001 WL 34660104 (D. Minn. Oct. 26, 2001), the defendants filed a motion to dismiss the

plaintiff's complaint. The plaintiff responded by filing a First Amended Complaint. The district

court referred the motion to dismiss to the magistrate judge and directed the court to, at the same

time, consider the plaintiff's First Amended Complaint (in accordance with Pure Country). The

court determined that it would allow the plaintiff to consider whether he desired to amend the

complaint further, in light of the issues raised in the motion to dismiss. From there, the Court

instructed the parties that the motion to dismiss, if still appropriate, would be directed at the final

amended complaint.

Accordingly, the Court finds that it is procedurally proper to allow amendments in the

present case prior to consideration of any motions to dismiss and the merits of Plaintiff's claims.

The Court freely allows Plaintiff leave to amend his Complaint, by the addition of factual

allegations and the clarification of existing claims. Plaintiff should be allowed a full and fair

opportunity to construct his claims as he sees fit prior to consideration of the State Defendants'

motion to dismiss. See Foman, 371 U.S. at 182.

The Court finds no reason, on the present record, as to why it should deny Plaintiff the

opportunity to amend his Complaint. Plaintiff's motion for leave to amend was filed in time to be

considered prior to the State Defendants' Motion to Dismiss, [Docket No. 28]. Significantly, the

State Defendants do not oppose the proposed amendments and will not suffer any undue prejudice as a result of the proposed amendments. As articulated in the facts section above, Plaintiff's proposed First Amended Complaint does not introduce any new claims not previously encompassed by Plaintiff's original Complaint.

The proposed amendments Plaintiff seeks to incorporate which <u>add</u> to the original pleadings are limited to only additional factual allegations in support of the originally advanced claims. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded an opportunity to test [their] claim on the merits[,]" <u>Foman</u>, 371 U.S. at 182, and such a test as is currently pending before the Court in the form of the State Defendants' Motion to Dismiss, [Docket No. 28], should be considered in light of facts Plaintiff thinks sufficient to respond to and withstand the pending motion to dismiss. <u>See generally</u>, <u>Pure Country, Inc.</u>, 312 F.2d at 956.

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Leave to File an Amended Complaint, [Docket No. 92].

## III.   STATE DEFENDANTS' MOTION TO DISMISS, [DOCKET NO. 28]

The State Defendants (namely, all Defendants save MSOP patient Defendants Brown and Hammond) move the Court for an order dismissing Plaintiff's original Complaint with prejudice for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (State Defendants' Motion to Dismiss, [Docket No. 28]).

Upon extensive review of Plaintiff's now operative First Amended Complaint, [Docket No. 97], the Plaintiff does not incorporate any new, additional claims against the State Defendants. Additionally, to the extent the First Amended Complaint makes factual adjustments

and clarifications to Plaintiff's existing claims, the Court concludes that the amendments do not significantly or materially alter the original Complaint but rather serve simply to clarify Plaintiff's existing claims. Therefore, in the interests of judicial efficiency, the Court will consider the State Defendants' Motion to Dismiss, [Docket No. 28], as redirected at Plaintiff's First Amended Complaint.[2]

### A.    Standard of Review

### 1.    Lack of Subject Matter Jurisdiction

"A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may challenge at any time the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge, courts may consider matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's factual allegations. Osborn, 918 F.2d at 729-30, n.6.

---

[2] The Court recognizes that generally "an amended complaint supercedes an original complaint and renders the original complaint without legal effect." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) (citing In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citing, in turn, Washer v. Bullitt County, 110 U.S. 588, 562 (1884) ("When a petition is amended by leave of the court the cause proceeds on the amended petition."))). It follows that, traditionally, "if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's Motion to Dismiss moot." Onyiah v. St. Cloud State Univ., 655 F. Supp. 2d 948, 958 (D. Minn. 2009) (Erickson, C.M.J.), adopted by 655 F. Supp. 2d 948 (D. Minn. 2009) (Rosenbaum, J.). "If [the defendants] believe[] that certain of the claims in the Amended Complaint fail, [they] must file a new motion aimed at that pleading." Varga v. U.S. Bank Nat'l Assn., 2013 U.S. Dist. LEXIS 46659, at *3 (D. Minn. Apr. 1, 2013) (Kyle, J.). However, in the interests of judicial efficiency and because Plaintiff's proposed First Amended Complaint does not introduce any new or unique claims not previously advanced by the original Complaint, the Court construes the State Defendants' Motion to Dismiss, [Docket No. 28], as redirected towards Plaintiff's now operative First Amended Complaint.

2.      **Failure to State a Claim Upon Which Relief May Be Granted**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint articulate only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts must undertake the "context-specific task" of determining whether the moving party's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See id. at 679-81. The moving party must "plead[ ] factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

Even considering the liberal construction given to *pro se* plaintiffs' pleadings, the facts alleged in a complaint must state a claim for relief as a matter of law. Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) (citing Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980)). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted). See, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.      Analysis**

As discussed in Sections I and II, supra, Plaintiff alleges approximately 20 separately articulated claims against the State Defendants, often directed at the State Defendants collectively. Plaintiff explicitly brings the present Section 1983 action against the Minnesota Department of Human Services, MSOP, numerous individually identified MSOP employees in

both their individual and official capacities, and various unidentified MSOP "Doe Defendants." The Court evaluates Plaintiff's claims as advanced in his now operative First Amended Complaint and as challenged in the State Defendants' Motion to Dismiss, [Docket No. 28].

### 1. Plaintiff's Federal Claims Against the State Entity Defendants and Individual Defendants in their Official Capacities

As a threshold jurisdictional consideration, the Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996) (citations omitted); Faibisch v. University of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity.").

The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119-20 (D. Minn. 2008) (citing Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004)). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan. 8, 2010) (citing Baker, 501 F.3d at 925 (quoting Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1999))).

"It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

As employees of MSOP and the Minnesota Department of Human Services, the individually identified State Defendants are state officials. The Court necessarily construes Plaintiff's alleged Section 1983 official capacity claims against the Minnesota Department of Human Services, MSOP, and the individually identified State Defendants as alleged against the employing entity, the State of Minnesota.

The present record before the Court lacks any evidence or authority demonstrating either the state's consent to suit or Congressional abrogation of the state's sovereign immunity, and therefore, the Court recommends that Plaintiff's Section 1983 claims as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice for lack of subject matter jurisdiction to the extent Plaintiff seeks monetary damages. See Semler, 2010 WL 145275, at *6 ("To the extent Plaintiff asserts claims against the Minnesota Department of Human Services, MSOP, or individually identified State Defendants for actions taken in their official capacities pursuant to 42 U.S.C. § 1983, the claims must be dismissed with prejudice.").[3]

## 2. Plaintiff's State Law Claims Against the State Entity Defendants and Individual Defendants in their Official Capacities

In addition to his Section 1983 claims, Plaintiff alleges a number of state law official capacity claims against the State Defendants. To the extent Plaintiff alleges any state law claims against the Minnesota Department of Human Services, MSOP, and any individually identified

---

[3] This analysis and recommendation does not apply to Plaintiff's federal claims to the extent they seek relief in a form other than monetary damages/compensation.

State Defendants in their official capacities (i.e., state law claims alleged against the State of Minnesota itself, see Section III.B.1, supra), the Court also recommends dismissal with prejudice for lack of subject matter jurisdiction.

"The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought." Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000) (emphasis added). "[W]hile the Supreme Court has long recognized an exception to Eleventh Amendment immunity permitting suits in federal court against state officials alleged to have violated federal law, at least where the relief sought is only injunctive, Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that exception does not extend to allow such suits based on pendent state-law claims even if the relief sought is limited to prospective injunctive relief[.]" Minnesota Pharmacists Ass'n, 690 F. Supp. 2d at 815 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105-106 (1984) ("We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.")). Accordingly, the Court recommends that Plaintiff's state law claims as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice, regardless of the nature of the relief sought, for lack of subject matter jurisdiction.[4]

With the exception of Plaintiff's federal claims for non-monetary, injunctive relief, all that now remains before the Court are Plaintiff's claims against the individually identified State Defendants in their individual capacities.

---

[4] This would include Plaintiff's state law claims of intentional and negligent infliction of emotional distress, negligence, defamation, and reprisal.

### 3.       Plaintiff's Individual Capacity Federal Claims

Plaintiff alleges numerous federal claims for relief pursuant to 42 U.S.C. § 1983. For relief pursuant to 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). Vicarious liability does not exist in actions brought pursuant to 42 U.S.C. § 1983, Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and the doctrine of respondeat superior does not apply to actions under Section 1983. Monnell v. Dep't of Soc. Servs., 436 U.S. 659, 691 (1978). Accordingly, to state a claim for relief pursuant to Section 1983, a plaintiff must plead sufficient facts to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

In addition to pleading individual involvement, Plaintiff must first sufficiently plead a violation of a specific constitutional right. The Court addresses each of Plaintiff's remaining Section 1983 claims in turn.

### a.       Deliberate Indifference to Risk of Assault – Counts 1 and 2

At the heart of Plaintiff's First Amended Complaint are two individual capacity claims that various individual State Defendants were deliberately indifferent to Plaintiff's serious risk of both physical and sexual assault, in violation of Plaintiff's Fourteenth Amendment Due Process

rights under the Constitution and the Minnesota state constitution.[5] (Proposed First Amended

Compl. [Docket No. 97], at 50-54).

"Although an involuntarily committed patient of a state hospital is not a prisoner per se,

his confinement is subject to the same safety and security concerns as that of a prisoner." Revels

v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004). Accordingly, although deliberate indifference

claims proceed under the Fourteenth Amendment when alleged by a civilly committed plaintiff,

as Plaintiff correctly identifies in his First Amended Complaint, the Eighth Amendment

deliberate indifference standard of review applies. Id.; Senty-Haugen v. Goodno, 462 F.3d 876,

889 (8th Cir. 2006).

The Eighth Amendment to the United States Constitution prohibits the government from

inflicting "cruel and unusual punishments" on persons convicted of crimes. See Rhodes v.

Chapman, 425 U.S. 337, 344-46 (1981). A prison official (or, in the present case, an employee at

a state civil commitment facility) may violate the Eighth Amendment if he or she is deliberately

indifferent to the need to protect an inmate from a substantial risk of harm from other inmates.

Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). To plead deliberate indifference in this

regard, a plaintiff must make a two-part showing: (1) that, when viewed objectively, the alleged

deprivation of rights was sufficiently serious, and (2) that the defendant, subjectively, had the

requisite "culpable state of mind." Irving v. Dormire, 518 F.3d 441, 446 (8th Cir. 2008) (quoting

Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The deprivation is "objectively, sufficiently

serious" when the official's failure to protect results in the inmate being "incarcerated under

---

[5] To the extent Plaintiff implicates violations of the Minnesota state constitution as grounds for relief in alleging his federal 1983 claims (as Plaintiff does throughout his proposed First Amended Complaint), the Court recommends summarily dismissing such a cause of action. "Unlike 42 U.S.C. § 1983, Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution." See Riehm v.Engelking, No. 06-cv-293 (JRT/RLE), 2007 WL 37799, at *8 (D. Minn. Jan. 4, 2007) (citing Guite v. Wright, 976 F. Supp. 866, 871 (D. Minn. 1997)). The Court focuses its analysis on Plaintiff's alleged individual capacity violations of the United States Constitution.

conditions posing a substantial risk of serious harm." Id. An official is deliberately indifferent when he or she actually knows of the substantial risk and fails to respond reasonably. Irving, 518 F.3d at 844-45.

By his First Amended Complaint, Plaintiff attributes the alleged physical assault by Defendant Brown (Count 1) to the deliberate indifference of a somewhat ill-defined group of individual State Defendants, pled as "Abson, Jennings, Rose, Brewer-Ottom, and any other MSOP-ML staff whose true names are not presently and currently known to the Plaintiff and whom have personal knowledge of the incidents complained of herein," with intermittent and inconsistent references to various Doe Defendants and Defendant Moser. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 39, 40, et seq.). More specifically, Plaintiff alleges that these not-so-specifically identified State Defendants placed Plaintiff and Defendant Brown in the same room, that Plaintiff had informed these Defendants that Plaintiff and Defendant Brown were not getting along and that Defendant Brown had a history of violent behavior, that these State Defendants witnessed unfruitful staff-facilitated mediation sessions between Plaintiff and Defendant Brown and nevertheless continued to room Plaintiff and Defendant Brown together, and that these Defendants moved Defendant Brown to Plaintiff's housing unit. (Id. ¶¶ 39, 40, 43, 44, 45, 55). As a result, Plaintiff generally alleges that Defendants Rose, Brewer-Ottom, Moser, and various other unidentified MSOP staff were deliberately indifferent to Plaintiff's risk of assault. (Id. ¶ 46). Plaintiff alleges "proof" of such deliberate indifference by Defendants' statement that staff-facilitated mediation sessions between Plaintiff and Defendant Brown "did not go according to plan." (Id. ¶ 49).

With respect to Count 1, Plaintiff's First Amended Complaint fails to sufficiently allege actual, subjective knowledge by any State Defendant of Plaintiff's risk of an objectively serious

deprivation of rights. Construing the factual allegations advanced in Plaintiff's First Amended Complaint in the light most favorable to Plaintiff, Plaintiff at best alleges that leading up to the alleged physical assault by Defendant Brown, various individual State Defendants knew Plaintiff and Defendant Brown were not getting along and that staff-facilitated mediation sessions had not been going "according to plan." However, Plaintiff does not plead any facts concerning the nature of these alleged disagreements, much less any facts implicating or suggesting the specific possibility of an impending physical assault. Plaintiff then alleges that he informed a collective of individual State Defendants that Defendant Brown had a general history of violent behavior. However, these allegations are conclusory and lack the specificity necessary to implicate any Defendant's actual, subjective knowledge of an impending, serious risk of physical assault. "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835 (1994). Plaintiff's allegation that various individual State Defendants knew Defendant Brown and Plaintiff had not been "getting along" is insufficient to implicate specific knowledge of a serious, impending risk of a physical assault and insufficient to plead actual knowledge of an impending physical assault and deliberate disregard thereof. See, in contrast, Nelson v. Shuffman, 603 F.3d 439, 447 (8th Cir. 2010) (wherein the alleged assailant's previous instances of sexual assault while in jail, specific incidents of soliciting sex from other residents, "relentless barrage of physical and sexual threats, assaultive and sexually explicit behavior, and related violent and aggressive misconduct," and time spent in isolation and restraints allowed the court to find that plaintiff could sustain his claim that defendants had actual knowledge that plaintiff had indeed faced an objectively serious risk of harm by being placed in a room with the defendant). Unlike

the facts in <u>Nelson</u>, <u>supra</u>, Plaintiff here does not plead any individual State Defendant's subjective awareness of past predatory/assaultive behavior or any other specific facts that would even suggest their actual knowledge of an impending assault by Defendant Brown. <u>Id.</u> Nothing in Plaintiff's First Amended Complaint is sufficient to plausibly plead any State Defendants' actual knowledge of a risk of physical assault, as Plaintiff's allegations do not "nudge" his claims against the Defendants "across the line from conceivable to plausible." <u>Iqbal</u>, 556 U.S. at 679-81.

As a result, Plaintiff's First Amended Complaint fails to sufficiently plead a violation of Plaintiff's Fourteenth Amendment rights via deliberate indifference to a substantial risk of serious physical harm, and the Court recommends dismissal of Count 1 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

With respect to the alleged sexual assault by Defendant Hammond (Count 2), Plaintiff again merely conclusorily alleges that prior to the assault, Plaintiff reported to Defendants Jesson, Johnston, Hebert, Berg, Moser, Lundquist, Basaraba, and various Doe Defendants that Defendant Hammond had threatened to sexually assault Plaintiff and told these Defendants "what Defendant Hammond had done in the past." (Proposed First Amended Complaint [Docket No. 97], ¶ 59). Plaintiff also alleges that Plaintiff and Defendant Hammond, too, had undergone a number of unfruitful staff-facilitated mediation sessions prior to the alleged sexual assault, that Defendant Hammond had disclosed that he had inappropriately touched Plaintiff in the past in such a session, and that Plaintiff had explicitly informed Doe Defendants #7 and #8 that he would likely be assaulted at the hands of Defendant Hammond. (<u>Id.</u> ¶¶ 60-62).

With respect to Count 2, Plaintiff's First Amended Complaint again fails to sufficiently demonstrate actual, subjective knowledge by any particular Defendant of Plaintiff's risk of an objectively serious deprivation of rights. Plaintiff's allegations continue to be conclusory and

entirely unsupported by sufficiently specific factual allegations, even construing the factual allegations advanced in Plaintiff's First Amended Complaint in the light most favorable to Plaintiff. First, Plaintiff's allegation that a collective of individual State Defendants were informed of the alleged risk Hammond posed to Plaintiff and knew of Hammond's unspecified "past behavior" is vague and conclusory at best. Plaintiff pleads no specific facts indicating how, when, or to what extent any specifically identified State Defendants received this conclusory information, what this information consisted of, or whether such Defendants had knowledge of any facts tending to support Plaintiff's conclusory allegations. Beyond the fact that Plaintiff's allegations are merely conclusory, it is simply not plausible that Plaintiff informed the identified State Defendants collectively as alleged; rather, it is apparent to the Court that by naming a group of individual State Defendants, Plaintiff simply attempts to avoid a major pitfall of Plaintiff's original Complaint in which Plaintiff generically and conclusorily attributes all alleged constitutional violations to the State Defendants as a collective group.

With regard to Plaintiff's allegation that he told two Doe Defendants that he believed he was at risk of being sexually assaulted, this allegation is again conclusory, unsupported by specific facts, and fails to sufficiently allege or implicate an actual, subjective belief by any individual Defendant of Plaintiff's risk of such an assault. Plaintiff merely alleges that he made the conclusory statement that he believed he may be assaulted. No allegations contained in Plaintiff's First Amended Complaint indicate that any individual State Defendants had or should have had the actual, subjective belief that Plaintiff faced an objectively serious impending risk.

Finally, with regard to Plaintiff's most specific allegation – namely, that Defendant Hammond had self-reported a previous incident of inappropriate sexual contact with Plaintiff in Doe Defendant #7's presence – Plaintiff still fails to plead sufficient facts to implicate all

elements of deliberate indifference. To be liable for deliberate indifference, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. While this lone allegation may be sufficient to plead a single fact from which the single Doe Defendant may have been able to draw an inference of substantial risk of serious harm, Plaintiff alleges no facts that would tend to suggest that the Doe Defendant did indeed draw the inference. In fact, the allegations contained in Plaintiff's First Amended Complaint tend to suggest that the Doe Defendant <u>did not</u> draw the inference and instead believed that continuing the staff-facilitated mediation sessions was an appropriate response. As a result, nothing in Plaintiff's First Amended Complaint is sufficient to plausibly plead any particular, sufficiently identified State Defendant's actual knowledge or belief of Plaintiff's risk of an impending sexual assault, and, as a result, Plaintiff's allegations do not "nudge" his claims against the Defendants "across the line from conceivable to plausible." <u>Iqbal</u>, 556 U.S. at 679-81.

Plaintiff's First Amended Complaint fails to sufficiently plead a violation of Plaintiff's Fourteenth Amendment rights via deliberate indifference to a substantial risk of serious harm, and the Court recommends dismissal of Count 2 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

**b.    Failure to Provide Adequate Procedural and Substantive Due Process – Counts 3 and 4**

At Counts 3 and 4 of Plaintiff's First Amended Complaint, Plaintiff alleges that various individual State Defendants failed to provide Plaintiff with adequate procedural and substantive due process, in violation of Plaintiff's Fourteenth Amendment Due Process rights under the Constitution and the Minnesota state constitution. (Proposed First Amended Compl. [Docket No. 97], at 54-57).

> The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The threshold question in assessing Plaintiffs' procedural due process claim is whether they were deprived of a protected liberty or property interest. <u>Dover Elevator Co. v. Ark. State Univ.</u>, 64 F.3d 442, 445-46 (8th Cir. 1995). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (citations omitted). A property interest may arise from "'existing rules or understandings that stem from an independent source such as state law.'" <u>Skeets v. Johnson</u>, 816 F.2d 1213, 1214 (8th Cir. 1987) (<u>quoting</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).

<u>Pyron v. Ludeman</u>, No. 10-cv-3759 (PJS/JJG), 2011 WL 3293523, at *7 (D. Minn. June 6, 2011) <u>report and recommendation adopted</u>, No. 10-cv-3759 (PJS/JJG), 2011 WL 3290365 (D. Minn. July 29, 2011) <u>aff'd sub nom.</u> <u>Hollie v. Ludeman</u>, 450 F. App'x 555 (8th Cir. 2012).

The Court reviews a Fourteenth Amendment procedural due process claim in two steps. <u>Senty-Haugen</u>, 462 F.3d at 886. First, the Court determines whether the plaintiff has alleged deprivation of a protected liberty or property interest. <u>Id.</u> Protected liberty interests are found in the Due Process Clause itself, and they may also be created by the laws of the states, as discussed above. <u>Id.</u> If the plaintiff has a protected liberty or property interest, the Court determines "what process is due by balancing the specific interest that was affected . . . the likelihood that the [applicable procedures] would result in an erroneous deprivation, . . . [and the affected program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." <u>Id.</u> (<u>citing</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332-35 (1976).

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the

Mathews balancing test." Senty-Haugen, 462 F.3d at 886. Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. Id. However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement". Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).

Substantive, as opposed to procedural, due process protects against the government engaging in conduct that is so arbitrary and egregious that it "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." Strutton v. Meade, 668 F.3d 558 (8th Cir. 2012) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)).

Plaintiff alleges due process violations only in a most conclusory fashion. By his First Amended Complaint, Plaintiff alleges that "Defendant Doe #5" prescribed Plaintiff "psychotropic medications" having the alleged effect of causing Plaintiff to enter a state of "medically induced rage." (Proposed First Amended Compl. [Docket No. 97], ¶ 78). Upon extensive review of Plaintiff's First Amended Complaint and construing the allegations contained therein liberally and in favor of Plaintiff, it appears to the Court that Plaintiff alleges that the "medically induced rage;" the State Defendants' issuance of a Behavioral Expectations Report (BER) while Plaintiff was in the alleged state of medically induced rage; the potential impact said BER could potentially have on Plaintiff's vocational placement at MSOP, (id. ¶ 72); and the State Defendants' refusal to participate in an "in-house disciplinary hearing" regarding Plaintiff's alleged state of medically induced rage, (id. ¶¶ 87-89), constitute the entirety of Plaintiff's allegations in support of Plaintiff's procedural due process claim.

Plaintiff fails to specifically identify any protected liberty or property interest at issue. At best, the Court may generously construe Plaintiff's First Amended Complaint as potentially

alleging a liberty interest in participating in vocational programming. However, neither the Due Process Clause nor case law provides civilly committed individuals with a liberty or property interest in vocational programming. See, e.g., Persechini v. Callaway, 651 F.3d 802, 807 (8th Cir. 2011) (holding that denying or terminating participation in a drug abuse treatment program, like denial or termination of other discretionary prison programs, does not result in either an atypical or a significant hardship and does not constitute a protected liberty interest).[6]

As a result, Plaintiff fails to allege a procedural due process violation, and the Court recommends dismissal of Count 3 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

With respect to Plaintiff's substantive due process claim (Count 4), Plaintiff merely alleges in a cursory and circuitous fashion that various named Defendants have "violated Plaintiff's well established rights to substantive due process" as a result of their failure to provide adequate procedural due process. (Proposed First Amended Compl. [Docket No. 97], ¶ 166). Plaintiff's conclusory, general allegation of a substantive due process violation coupled with the fact that he fails to sufficiently allege a specific procedural due process violation (the only alleged basis for his substantive due process claim) prompts the Court to also recommend dismissal of Plaintiff's Count 4 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

---

[6] As cited in Persechini v. Callaway, 651 F.3d 802, 807 (8th Cir. 2011): there is no protected liberty interest in the sentence reduction that may be granted upon completing a Bureau of Prisons drug treatment program, Giannini v. Fed. Bureau of Prisons, 405 Fed. Appx. 96, 97 (8th Cir. 2010) (unpublished); or in halfway-house placement after completing a drug-treatment program, Staszak v. Romine, 2000 WL 862836, at *1 (8th Cir. June 29, 2000) (unpublished); or in remaining in a work release program, Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668 (8th Cir. 1996); or in participating in a drug treatment program to qualify for early release, Koch v. Moore, 1995 WL 141733, at *1 (8th Cir. April 4, 1995) (unpublished); or in remaining in a discretionary "shock incarceration program," Klos v. Haskell, 48 F.3d 81, 88 (2d Cir. 1995).

      **c.**      **Deliberate Indifference to Medical Needs Following the Two Alleged Assaults – Counts 5 and 6**

At Counts 5 and 6 of Plaintiff's First Amended Complaint, Plaintiff alleges that various individual State Defendants were deliberately indifferent to Plaintiff's medical needs following the two alleged assaults, in violation of Plaintiff's Fourteenth Amendment Due Process rights under the Constitution and the Minnesota state constitution. (Proposed First Amended Compl. [Docket No. 97], at 57-61).

As addressed in Section III.B.3.a, supra, deliberate indifference claims proceed under the Fourteenth Amendment when alleged by a civilly committed plaintiff, yet the Court still applies the Eighth Amendment deliberate indifference standard of review.

Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment and, therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (quotations and citations omitted); see also Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs." (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976))).

To demonstrate the "deliberate indifference" necessary to sufficiently plead an Eighth Amendment (or, in the present case, Fourteenth Amendment) violation, a plaintiff must demonstrate (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). In alleging deliberate indifference, Plaintiff must demonstrate "more than negligence, more even than gross negligence . . . ." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.

1995). "Deliberate indifference is akin to criminal recklessness." <u>Drake v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." <u>Baez v. Rosemack</u>, No. 09-cv-2121 (RHK/LIB), 2011 U.S. Dist. LEXIS 103513, at *13 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.) (<u>citing</u> <u>Coleman v. Rahija</u>, 114 F.3d 778, 785 (8th Cir. 1997)). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." <u>Id.</u>

Plaintiff's claims of deliberate indifference turn on his general allegations that MSOP employees (unidentified Doe Defendants #5 and #6) failed to provide sufficient and appropriate medical care following the two alleged assaults. Plaintiff alleges that as a result of his physical assault by Defendant Brown, Plaintiff suffered migraines, bloody noses, blurred vision, loss of hearing, memory loss, spotty vision, and emotional and psychological distress. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 91-93). As a result of his sexual assault by Defendant Hammond, Plaintiff alleges that he suffered a high risk of STDs, flash backs, paranoia, depression, and an increased chance of dying from an undetected STD. (<u>Id.</u> ¶ 101). Upon extensive review of Plaintiff's First Amended Complaint, it appears to the Court that Plaintiff attempts to identify two instances of alleged deliberate indifference to his medical needs: Doe Defendant #5's failure to "deal with" and adequately investigate Plaintiff's ailments following

his physical assault, (id. ¶¶ 95-96); and Doe Defendant #6's failure to adequately test Plaintiff for STD's following his alleged sexual assault, (id. ¶¶ 67, 104).

Upon review by the Court, Plaintiff's pleadings are insufficient to implicate actions "akin to criminal recklessness." To survive the present 12(b)(6) motion, Plaintiff's First Amended Complaint must demonstrate that Doe Defendants #5 and #6 actually knew of some serious medical need Plaintiff suffered and deliberately disregarded it. See Jolly, 205 F.3d at 1096; Baez, 2011 U.S. Dist. LEXIS 103513, at *13. Even viewing the allegations in the light most favorable to Plaintiff, Plaintiff's claims against Doe Defendants #5 and #6 fail to specifically demonstrate Defendants' actual knowledge and subsequent disregard of an excessive and actual risk to Plaintiff's health.

Plaintiff's allegations concerning Doe Defendant #5 and the medical attention Plaintiff did or did not receive following Defendant Brown's physical assault are conclusory and do not state with any degree of specificity how Doe Defendant #5 disregarded a known medical need. Rather, Plaintiff simply alleges that Doe Defendant #5 "failed to even deal with" or "investigate" Plaintiff's ailments. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 95, 96). Plaintiff alleges that Defendant Doe #5 failed to check Plaintiff for concussions following Defendant Brown's assault and states conclusorily that Plaintiff did not receive adequate medical care for his head wounds. (Id. ¶ 54). "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009) (citations omitted). Plaintiff alleges no facts identifying Doe Defendant #5's knowledge of an objectively serious health risk. Plaintiff's allegations in fact indicate that Plaintiff did indeed receive medical attention following Defendant Brown's assault, as he was seen by and spoke to

MSOP medical staff. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 95, 96). As articulated above, Plaintiff has no constitutional right to receive a particular or requested course of medical treatment, and prison doctors remain free to exercise their independent medical judgment. Consequently, Plaintiff fails to allege a Fourteenth Amendment deliberate indifference to a serious medical need violation, and the Court recommends dismissal of Count 5 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

Similarly, Plaintiff's allegations concerning Doe Defendant #6 fail to sufficiently allege a constitutional violation. Although Plaintiff does allege some facts identifying allegedly deficient treatment (namely, inadequate STD testing), Plaintiff fails to allege any facts indicating that he actually suffered from a serious health risk or that Doe Defendant #6 knew of such a health risk. Again, Plaintiff's allegations in fact indicate that Plaintiff did indeed receive medical attention following Defendant Hammond's sexual assault, as he was taken to Mercy Hospital in Moose Lake, Minnesota. (Proposed First Amended Compl. [Docket No. 97], ¶ 102). Following Plaintiff's treatment at the hospital, he returned to MSOP, and, as articulated above, Plaintiff had no constitutional right to receive a particular or requested course of medical treatment at that time, as the MSOP doctors remained free to exercise their independent medical judgment. Plaintiff pleads no facts to suggest that Plaintiff actually had an STD, any symptoms of an STD, nor that he ultimately sustained any actual injury that might have been remedied by the alleged STD testing which would suggest that Doe Defendant #6 was deliberately indifferent to a known medical risk. As a result, Plaintiff fails to allege a Fourteenth Amendment deliberate indifference to a serious medical need violation, and the Court recommends dismissal of Count 6 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

### d.        Equal Protection Violations – Counts 7, 8, 9, and 10

At Counts 7 through 10 of Plaintiff's First Amended Complaint, Plaintiff alleges that various individual State Defendants violated Plaintiff's Fourteenth Amendment Equal Protection rights under the Constitution and the Minnesota state constitution. (Proposed First Amended Compl. [Docket No. 97], at 61-68).

To plead an actionable equal protection claim, a plaintiff must allege facts sufficient to demonstrate that he has been treated differently from similarly situated individuals. Karsjens v. Jesson, No. 11-cv-3659 (DWF/JJK), 2014 WL 667971, at *10 (D. Minn. Feb. 20, 2014) (citing Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000); Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) (stating that to sustain an equal protection claim, a plaintiff must show that he belongs to a group that had been treated less favorably than others who are "similarly situated"); see also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) ("In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'"); Beaulieu v. Ludeman, No. 07-cv-1535, 2008 WL 2498241, at *12 (D. Minn. June 18, 2008) ("Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim.")).

Plaintiff fails to allege any specific facts in the First Amended Complaint sufficient to demonstrate that he has been treated any less favorably than similarly situated individuals. Plaintiff's factual offering in support of an equal protection violation is minimal. Plaintiff only generally alleges four counts of equal protection violations. Upon a generous, liberal reading of Plaintiff's allegations, Plaintiff asserts two distinct legal bases for his equal protection claims

(namely, "class of one" and race) and has applied each legal basis to each of his two previously alleged assaults. Plaintiff relies on the same set of factual allegations in support of each of the four equal protection counts, namely, paragraphs 107 through 114 of his First Amended Complaint, [Docket No. 97]. In these paragraphs, Plaintiff alleges simply that Defendants Moser, Osborne, Brewer-Ottom, Rose, Abson, various Doe Defendants, and "all other respective Defendants not presently known to Plaintiff" denied Plaintiff's request(s) to change rooms at MSOP and that, in so denying, discriminated against Plaintiff for being a white U.S. citizen and bisexual male. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 109, 112). Plaintiff goes on to only conclusorily allege that the State Defendants have treated Plaintiff differently than others similarly situated. (Id. ¶ 113).

Not only does Plaintiff only conclusorily allege discrimination without including any specific facts in support thereof – alleging only conclusorily that Defendants "have a history of refusing to move white male clients and instead have willfully at a whim moved heterosexual males without any question," (id. ¶ 110), and that Defendants "intentionally caused discrimination of the Plaintiff based upon the herein stated class of being white, male, U.S. citizen, bisexual, whom is civilly committed," (id. ¶ 112) – but Plaintiff's own factual allegations seem to actual indicate that most similarly situated MSOP patients also have room change requests denied; Plaintiff alleges that the Defendants, collectively, have rarely moved other patients that were the same as or similarly situated as Plaintiff upon request. (Id. ¶ 108).

As a result of Plaintiff's minimal, purely conclusory factual allegations, Plaintiff fails to allege any Fourteenth Amendment Equal Protection violation, and the Court recommends dismissal of Counts 7, 8, 9, and 10 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

e.      **First Amendment Retaliation – Counts 11, 12, and 13**

At Counts 11 through 13 of Plaintiff's First Amended Complaint, Plaintiff alleges that various individual State Defendants violated Plaintiff's First Amendment rights under the Constitution and the Minnesota state constitution by retaliating against his constitutionally protected speech. (Proposed First Amended Compl. [Docket No. 97], at 68-74).

"To establish a retaliation claim, a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v. Herberg, No. 12-cv-3179 (RHK/JJG), 2014 WL 107718, at *3 (D. Minn. Jan. 10, 2014) (citing Revels, 382 F.3d at 876). "Failure to satisfy any of the three elements results in the failure of the claim." Evenstad, 2014 WL 107718, at *3 (citing Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004)); Beaulieu, 690 F.3d at 1025. "[C]ivilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances[.]" Evenstad, 2014 WL 107718, at *3. In the prison context, courts have observed that prison officials are prohibited from "punish[ing] an inmate because he exercises his constitutional right of access to the courts." Sisneros v. Nix, 95 F.3d 749, 751 (8th Cir. 1996).

That being said, Plaintiff fails to allege sufficient facts in his First Amended Complaint to support any retaliation claim. Plaintiff conclusorily claims via the titles for Counts 11 through 13 that the State Defendants retaliated against Plaintiff's protected First Amendment speech by (1) having Defendant Brown physically assault Plaintiff (Count 11); (2) having Defendant Hammond sexually assault Plaintiff (12); and (3) issuing Plaintiff a "Major BER" (Count 13). However, Plaintiff alleges no specific facts to even suggest that the identified adverse actions

were at all motivated by any protected activity. Plaintiff merely identifies his protected activity (his filing of "grievances" against the State Defendants), (id. ¶ 71), and conclusorily alleges that "there was a causal connection between Defendants' . . . retaliatory actions towards the Plaintiff and the Plaintiff exercising his constitutional and statutory rights." (Id. ¶ 75).

Even assuming Plaintiff has sufficiently pled engagement in a protective activity and adverse action taken against him, Plaintiff fails to plead any facts that would plausibly tend to suggest any causal connection between the two. As a result of Plaintiff's purely conclusory allegations of causation, Plaintiff fails to allege any First Amendment retaliation violation, and the Court recommends dismissal of Counts 11, 12, and 13 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

### f.     Censorship – Count 14

At Count 14 of Plaintiff's First Amended Complaint, Plaintiff alleges that various individual State Defendants violated Plaintiff's First Amendment rights under the Constitution and the Minnesota state constitution by "censoring" constitutionally protected speech. (Proposed First Amended Compl. [Docket No. 97], at 74-75).

Plaintiff's factual allegations in support of his "censorship" claim are again minimal, and the Court has a difficult time properly construing the minimal factual allegations as showing any viable First Amendment Section 1983 claim. Liberally construing Plaintiff's claim, Plaintiff simply concludes that the State Defendants issued Plaintiff a "BER" (understood to be an internal MSOP disciplinary sanction) in response to Plaintiff "voicing his opinion" that he did not want Defendant Brown moved into the same unit as Plaintiff and that Plaintiff would "protect himself if need be." (Id. ¶¶ 115-116). Plaintiff further alleges that Defendants directed Plaintiff not to make similar threats in the future, constituting the alleged "censorship." (Id.)

In short, Plaintiff's allegations of "censorship" are at best minimal, conclusory, and ultimately insufficient to sustain a Section 1983 claim. Plaintiff fails to sufficiently articulate how the subject speech is protected or how the Defendants' response was unconstitutional, as "restrictions on prisoners' communications to other inmates are constitutional if the restrictions are 'reasonably related to legitimate penological interests.'" Shaw v. Murphy, 532 U.S. 223, 225 (2001) (citation omitted). Traditionally, federal courts do not intervene in the internal affairs of prisons and instead "adopted a broad hands-off attitude toward problems of prison administration." Id. at 228 (quoting Procunier v. Martinez, 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)). "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." Shaw, 532 U.S. at 229 (citation omitted). Accordingly, without alleging how the alleged "censorship" actions by the State Defendants are not reasonably related to legitimate interests, Plaintiff fails to articulate any viable First Amendment violation. Plaintiff's self-titled "censorship" claim is simply not actionable as alleged. The Court recommends dismissal of Count 14 under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### g.       Conspiracy – Counts 15 and 16

At Counts 15 and 16 of Plaintiff's First Amended Complaint, Plaintiff alleges, pursuant to 42 U.S.C. § 1985, that various individual State Defendants conspired to have Plaintiff assaulted and violate Plaintiff's constitutional rights. (Proposed First Amended Compl. [Docket No. 97], at 76-79).

In support of his conspiracy claims, Plaintiff alleges that numerous State Defendants (some identified, others identified simply by catch-all language) held daily morning staff meetings behind closed doors and that at said meetings Defendants discussed Plaintiff's serious risk of being sexually and physically assaulted. (Proposed First Amended Compl. [Docket No. 97], ¶¶ 121-122). Furthermore, Plaintiff alleges that these Defendants "verbally instructed" Defendants Brown and Hammond to assault Plaintiff. (Id. ¶ 124).

First, as discussed in the previous sections, Plaintiff has failed to sufficiently plead facts to demonstrate that any of the State Defendants violated his constitutional rights. "Civil conspiracy requires an agreement to participate in unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action, but rather is sustainable only after an underlying tort claim has been established." K & S Partnership v. Continental Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991) (quotations and citations omitted). Plaintiff cannot demonstrate that he suffered a constitutional harm as a result of the State Defendants' alleged agreement and action if, as discussed above relative to his underlying claims, he cannot show that he in fact suffered any constitutional harm.

However, regardless of whether Plaintiff is able to successfully plead any individual constitutional violations, Plaintiff fails to allege any non-conclusory, plausible facts that would support his claims that the State Defendants actually conspired. Plaintiff merely alleges in conclusory fashion that the State Defendants held daily staff meetings at which they conspired to have Plaintiff assaulted. Plaintiff goes so far as to allege that the State Defendants actually instructed Defendants Brown and Hammond to perform the underlying assaults. However, Plaintiff alleges no specific facts in his First Amended Complaint that would lead one to plausibly conclude that this was indeed the case or that there was any sort of conspiracy. Like the

complaint in Iqbal, which only alleged generally that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, Plaintiff's "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681 (emphasis added); see also Twombly, 550 U.S. at 554-55. The Court is "mindful that 'conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed.'" White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981) (quoting Sparkman v. McFarlin, 601 F.2d 261, 278 n.19 (7th Cir. 1979) (en banc) (Swygert, J., dissenting)). However, even though a plaintiff need not provide direct evidence of a conspiracy, he still must assert some plausible evidence.[7] Here, Plaintiff has alleged no specific facts that would support his Section 1985 conspiracy claims.

For these reasons, the Court recommends dismissal of Plaintiff's Section 1985 conspiracy claims (Counts 15 and 16) under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

For the foregoing reasons, the Court recommends that the State Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED** under Rule 12(b)(6) with respect to all of Plaintiff's federal claims as alleged against any and all State Defendants for failure to state a claim upon

---

[7] In White, the plaintiff alleged that a state court judge, a prosecutor, and his own defense counsel conspired together to have him removed from the courtroom during jury selection for his trial. White's complaint stated that he instructed his attorney that he wished to be present during all aspects of his trial, including jury selection. Nonetheless, the judge allowed White to be removed from the courtroom and placed in a holding cell during jury selection, without providing any reason in the record for doing so. When White was returned to the courtroom, an all-white jury had been seated. White both objected to the all-white jury and requested that he be appointed a new attorney; the trial court refused to alter the jury, and denied White's request for new counsel. 649 F.2d at 652. The Court of Appeals concluded, based on the plaintiff's complaint, that he "state[d] sufficient facts to give rise to the inference that there was . . . a meeting of the minds[, and a]coordingly, the district court erred by dismissing White's complaint for lack of specificity. Id.

which relief may be granted, specifically, for failure to plausibly allege any constitutional violations.[8]

### 4.      Plaintiff's Individual Capacity State Law Claims

Remaining before the Court are Plaintiff's state law claims as alleged against the individually identified State Defendants in their individual capacities, including intentional and negligent infliction of emotional distress (Counts 17 and 18); negligence (Count 19); defamation (Count 20); and reprisal (Count 21), as well as Plaintiff's state law claims against Defendants Brown and Hammond (Counts 22-24). Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009).

Because this Court recommends granting the State Defendants' Motion to Dismiss, [Docket No. 28], with respect to all federal claims in the First Amended Complaint alleged by Plaintiff against any and all State Defendants, and because there are no remaining federal claims alleged against Defendants Brown and Hammond, the Court also recommends declining to exercise supplemental jurisdiction over the remaining state law claims against all defendants. See Gregoire, 236 F.3d at 419-20 (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible).

## IV.    PLAINTIFF'S MOTION TO AMEND SUPPLEMENTAL COMPLAINT AS OF RIGHT OR FREELY, [DOCKET NO. 124]

Plaintiff moves the Court for an order granting Plaintiff leave to amend his Supplemental Complaint in the present case, [Docket No. 124].

---

[8] The Court recommends Plaintiff's Section 1983 claims for monetary damages and all state law claims for any relief as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice, and that Plaintiff's remaining claims be dismissed without prejudice, pursuant to Rule 12(b)(6).

### A.      Plaintiff's Proposed First Amended Supplemental Complaint

By his proposed First Amended Supplemental Complaint, [Docket No. 128-2], Plaintiff seeks to "clarify" and "particularize" his existing supplemental claims and the underlying facts in support thereof. Plaintiff's proposed First Amended Supplemental Complaint incorporates additional, more specific factual allegations in support of his existing claims; save for the addition of a new claim under the Minnesota Human Rights Act, which does not seem to rely on any unique facts not already articulated in support of Plaintiff's existing supplemental claims, the nature of the claims themselves remains largely intact when compared to Plaintiff's existing Supplemental Complaint. (See [Docket No. 128-1]).

The specific factual allegations advanced by Plaintiff's proposed First Amended Supplemental Complaint will be discussed in further detail in the Court's analysis of the State Defendants' Partial Motion to Dismiss, [Docket No. 100]. See Section V, infra.

### B.      Standard of Review

Federal Rule of Civil Procedure 15(a)(1)(B) provides that a party may once amend a pleading as a matter of course if filed within twenty-one (21) days after service of a 12(b) motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B).

### C.      Analysis

Plaintiff is entitled to amend his Supplemental Complaint as a matter of course, as he has not previously amended his Supplemental Complaint and he moved the Court for leave to do so within twenty-one (21) days of the State Defendants filing their 12(b) motion to dismiss. (See [Docket Nos. 100, 124]). Additionally, the State Defendants have not opposed Plaintiff's motion. (Resp. Mem. [Docket No. 137], at 3).

The Court **GRANTS** Plaintiff's Motion to Amend Supplemental Complaint as of Right or Freely, [Docket No. 124].

## V.      STATE DEFENDANTS' PARTIAL MOTION TO DISMISS, [DOCKET NO. 100]

The State Defendants move the Court for an order partially dismissing Plaintiff's Supplemental Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants move for dismissal of Plaintiff's Supplemental Complaint in its entirety, save for Count 1 as alleged against Defendant Angelique Brewer-Ottom. (State Defendants' Partial Motion to Dismiss, [Docket No. 100]).

Upon extensive review of Plaintiff's now operative First Amended Supplemental Complaint, [Docket No. 128-2], it does not appear to the Court that Plaintiff incorporates any new, additional claims against the State Defendants, save for his new purported Minnesota Human Rights Act claim. However, because Plaintiff's Minnesota Human Rights Act claim does not appear to rely on any unique factual allegations not already generally alleged in Plaintiff's original Supplemental Complaint, the Court does not believe that the addition of this new claim constitutes a material re-working of Plaintiff's Supplemental Complaint. Additionally, to the extent the First Amended Supplemental Complaint makes factual adjustments and clarifications to Plaintiff's existing claims, the Court concludes that the amendments do not significantly or materially alter the Supplemental Complaint but rather serve to clarify Plaintiff's existing claims. Therefore, in the interests of judicial efficiency, the Court will consider the State Defendants' Partial Motion to Dismiss, [Docket No. 100], as redirected at Plaintiff's First Amended Supplemental Complaint.[9]

### A.      Standard of Review

### 1.      Lack of Subject Matter Jurisdiction

[9] See footnote 2, supra.

See Section III.A.1, supra.

**2.      Failure to State a Claim Upon Which Relief May Be Granted**

See Section III.A.2, supra.

**B.      Analysis**

As discussed in Sections I and IV, supra, Plaintiff alleges approximately 12 separately articulated claims against the State Defendants. The Court evaluates Plaintiff's claims as advanced in his now operative First Amended Supplemental Complaint and as challenged in the State Defendants' Partial Motion to Dismiss, [Docket No. 100].

**1.      Plaintiff's Federal Claims Against the State Entity Defendants and Individual Defendants in their Official Capacities**

To the extent Plaintiff's First Amended Supplemental Complaint alleges federal claims against state entities and/or individual state employees in their official capacities, for the same reasons as articulated in Section III.B.1, supra, the Court recommends that Plaintiff's Section 1983 claims as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice for lack of subject matter jurisdiction, to the extent Plaintiff seeks monetary damages.

**2.      Plaintiff's State Law Claims Against the State Entity Defendants and Individual Defendants in their Official Capacities**

To the extent Plaintiff's First Amended Supplemental Complaint alleges any state law claims against state entities and/or individual state employees in their official capacities, for the same reasons as articulated in Section III.B.2, supra, the Court recommends that Plaintiff's state law claims as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice for lack of subject matter jurisdiction, regardless of the nature of the relief sought.

3.      **Plaintiff's Individual Capacity Federal Claims**

Plaintiff alleges numerous federal claims for relief pursuant to 42 U.S.C. § 1983. As articulated in Section III.B.3, <u>supra</u>, for relief pursuant to 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." <u>McDonald v. City of Saint Paul</u>, 679 F.3d 698, 704 (8th Cir. 2012) (<u>quoting</u> <u>Shrum ex rel Kelly v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). Vicarious liability does not exist in actions brought pursuant to 42 U.S.C. § 1983, <u>Beard v. Lockhart</u>, 716 F.2d 544, 545 (8th Cir. 1983), and the doctrine of <u>respondeat superior</u> does not apply to actions under Section 1983. <u>Monnell v. Dep't of Soc. Servs.</u>, 436 U.S. 659, 691 (1978). Accordingly, to state a claim for relief pursuant to Section 1983, a plaintiff must plead sufficient facts to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985); <u>Clemmons v. Armontrout</u>, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

Beyond direct, personal involvement in committing a constitutional violation, a prison official (or, in this case, an employee at a state civil commitment facility) may not be liable under Section 1983 for only negligent failure to train. <u>Ambrose v. Young</u>, 474 F.3d 1070, 1079 (8th Cir. 2007). A government official is liable if the plaintiff demonstrates "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the government official] can reasonably be said to have been

44

deliberately indifferent to the need." Id. at 1079-80 (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting, in turn, City of Canton v. Harris, 489 U.S. 378, 390 (1989))). "A failure to supervise claim may be maintained only if the official 'demonstrated deliberate indifference or tacit authorization of the offensive acts.'" Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007) (quoting Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (citation and quotations omitted)). The subjective deliberate indifference standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). If the risk was obvious, a fact finder may conclude that the prison official knew of the substantial risk. Id. at 552.

The Court addresses each of Plaintiff's Section 1983 and other federal claims as pled against various State Defendants in turn.

### a.    Retaliation – Count 1

At Count 1 of Plaintiff's First Amended Supplemental Complaint, Plaintiff alleges that various individual State Defendants violated Plaintiff's First Amendment rights by retaliating against his constitutionally protected speech and/or activity. (Proposed First Amended Supp. Compl. [Docket No. 128-2], at 120-122). Plaintiff specifically alleges Count 1 against Defendants Brewer-Ottom, White, Macklanberg, Hoffman, Christenson, Kenisal, Jesson, Doe #1, Johnston, Hebert, Berg, Moser, and Doe #2. (Id.)

As articulated in Section III.B.3.e, supra, "[t]o establish a retaliation claim, a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v.

Herberg, No. 12-cv-3179 (RHK/JJG), 2014 WL 107718, at *3 (D. Minn. Jan. 10, 2014) (citing

Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "Failure to satisfy any of the three

elements results in the failure of the claim."  Evenstad, 2014 WL 107718, at *3 (citing Higdon v.

Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004)).

The State Defendants challenge Count 1 of Plaintiff's Supplemental Complaint as failing

to allege a viable retaliation claim save with respect to Defendant Brewer-Ottom. Count 1 as

alleged against Defendant Brewer-Ottom will, accordingly, be allowed to continue forward.

With regard to the remaining State Defendants against whom Plaintiff alleges Count 1,

Plaintiff's allegations predominantly revolve around Defendant Brewer-Ottom. Plaintiff alleges

that Defendant Brewer-Ottom, "in conjunction with White and Macklanberg" and upon learning

of Plaintiff's present lawsuit, started removing shifts from Plaintiff's vocational programming

and stated that they were going to take the rest of Plaintiff's shifts. (Proposed First Amended

Supp. Compl. [Docket No. 128-2], ¶¶ 25-31). Plaintiff conclusorily alleges that "[a] causal

connection, through circumstantial evidence, can be made by the specific acts and omissions set

forth above between the Defendants' actions, including but not limited to, Brewer-Ottom, White,

and Macklanberg and the Plaintiff's exercise of his constitutional rights[.]" (Id. ¶ 34). Plaintiff

further alleges that various supervisory State Defendants – including Hoffman, Christenson,

Kenisal, and others – after learning of Plaintiff's present lawsuit, refused to rectify Brewer-

Ottom's (in conjunction with White and Macklanberg) retaliatory actions by restoring Plaintiff's

vocational programming hours and generally failed to remedy the alleged retaliatory action. (Id.

¶¶ 36-44).

With the exception of Defendant Brewer-Ottom, Plaintiff fails to sufficiently allege

direct, personal involvement in the retaliatory action, direct responsibility for the retaliatory

action, and <u>culpable motivation</u> by any other individual Defendant. Plaintiff's allegations in support of a requisite causal connection between the alleged protected activity and the subsequent adverse action, i.e. the requisite retaliatory "motivation," pertain exclusively to Defendant Brewer-Ottom. With regard to Defendants White and Macklanberg, Plaintiff merely alleges that they were aware of the present lawsuit and that they worked "in conjunction with" Defendant Brewer-Ottom in removing Plaintiff's vocational programming hours. Plaintiff's First Amended Supplemental Complaint, however, fails to allege any facts indicating that the adverse action was <u>motivated</u>, at least in part, by the protected activity with respect to any Defendant aside from Brewer-Ottom. With respect to the supervisory Defendants, Plaintiff merely alleges a failure to rectify the prior alleged retaliatory action, alleging no direct involvement therein nor sufficient facts to demonstrate an actual, subjective deliberate indifference thereto. Plaintiff fails to sufficiently allege direct, personal, culpable action by any individual State Defendant save Brewer-Ottom.

For the foregoing reasons, the Court recommends partial dismissal of Count 1 under Rule 12(b)(6) for failure to state a Section 1983 retaliation claim upon which relief may be granted against any individual Defendant, save against Defendant Brewer-Ottom in her individual capacity.

**b.** **Failure to Provide Procedural and Substantive Due Process – Counts 2 and 3**

At Counts 2 and 3 of Plaintiff's First Amended Supplemental Complaint, Plaintiff alleges that Defendant Doe #5 failed to provide Plaintiff with adequate procedural and substantive due process, in violation of Plaintiff's Fourteenth Amendment Due Process rights under the

Constitution and the Minnesota state constitution.[10] (Proposed First Amended Supp. Compl. [Docket No. 128-2], at 122-123).

As articulated in Section III.B.3.b, supra, the Court reviews a Fourteenth Amendment procedural due process claim in two steps. Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). First, the Court determines whether the plaintiff has alleged deprivation of a protected liberty or property interest. Id. If the plaintiff has a protected liberty or property interest, the Court determines "what process is due by balancing the specific interest that was affected . . . the likelihood that the [applicable procedures] would result in an erroneous deprivation, . . . [and the affected program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976).

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the Mathews balancing test." Senty-Haugen, 462 F.3d at 886. Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. Id. However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement". Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 322, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).

Substantive, as opposed to procedural, due process protects against the government engaging in conduct that is so arbitrary and egregious that it "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." Strutton v. Meade, 668 F.3d 558 (8th Cir. 2012) (citing United States v. Salerno, 481 U.S. 739, 746 (1987)).

---

[10] See footnote 5, supra.

Plaintiff conclusorily and generally alleges that the State Defendants, collectively, "have a policy, practice, procedure, etc… that does not allow the victim of an assault nor the assailant to be moved apart or even placed on a temporary incompatibility until after the interview process is completed." (Proposed First Amended Supp. Compl. [Docket No. 128-2], ¶ 47). Specifically, Plaintiff alleges that Defendant Doe #5 failed to interview Plaintiff following Defendant Brown's physical assault, in violation of Plaintiff's procedural due process and substantive due process rights. (Id. ¶ 48).

Plaintiff fails to identify any protected liberty or property interest at issue. At best, the Court may generously construe Plaintiff's First Amended Supplemental Complaint as alleging a liberty interest in being interviewed by MSOP staff following an assault. However, nothing informs the Court that such a liberty interest exists under the Due Process Clause or related statutory and/or case law. As a result, Plaintiff fails to allege a procedural due process violation, and the Court recommends dismissal of Count 2 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

Plaintiff relies on the same set of underlying facts in support of his substantive due process claim. However, because Plaintiff here, too, fails to allege conduct rising to the level of a substantive due process violation, the Court recommends dismissal of Count 3 under Rule 12(b)(6) for failure to state a Section 1983 claim upon which relief may be granted.

###    c.    Violation of the Americans with Disabilities Act and Rehabilitation Act – Count 5

At Count 5 of Plaintiff's First Amended Supplemental Complaint, Plaintiff alleges a violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). (Proposed First Amended Supp. Compl. [Docket No. 128-2], at 124-125).

As an initial matter, Plaintiff cannot sue any individual defendant in his or her individual capacity under the ADA because the ADA does not provide for individual liability. "The Eighth Circuit has held that individuals may not be sued in their individual capacities directly under the provisions of Title II of the ADA." Valder v. City of Grand Forks, 217 F.R.D. 491, 494 (D.N.D. 2003) (citing Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)). Accordingly, the Court determines whether Plaintiff can sustain an ADA claim against any state entity Defendants or any individual Defendants in their official capacities.[11]

It appears to the Court that no provision of the ADA guarantees employment to civilly committed sex offenders; as a result, the Court finds that Plaintiff lacks standing to bring the present ADA claim, based on allegations of employment discrimination at MSOP related to Plaintiff's vocational programming (or lack thereof). "MSOP is a treatment provider and not an 'employer' of its patients. . . . Accordingly, Plaintiffs' ADA claim fails and the Court recommends its dismissal with prejudice." Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *29 (D. Minn. Jan. 8, 2010).

The same may also apply to the extent Plaintiff alleges a claim of employment discrimination under the RA, as "[t]he ADA and the RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.'" Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) (citing Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998) (citing, in turn, Allison v. Department of Corrections, 94 F.3d 494, 497 (8th Cir. 1996)); see also Wooten v. Farmland Foods, 58 F.3d 382, 385 n.2 (8th Cir. 1995)).

---

[11] Minnesota has specifically waived its immunity from suit in federal court with regard to claims brought under the ADA. See Minn. Stat. § 1.05.

Regardless of whether Plaintiff may allege an ADA/RA employment discrimination claim against any MSOP Defendant(s), Plaintiff nevertheless fails to state a claim upon which relief may be granted pursuant to either the ADA or the RA, as Plaintiff fails to allege facts sufficient to demonstrate that the State Defendants discriminated against Plaintiff because of any alleged disability. Plaintiff only provides a legal conclusion in his pleading that various State Defendants discriminated against Plaintiff in removing Plaintiff from his employment at MSOP. (Proposed First Amended Supp. Compl. [Docket No. 128-2], ¶ 71). Plaintiff alleges no specific facts in support of this conclusory allegation. In fact, Plaintiff actually alleges that the State Defendants removed Plaintiff from his vocational programming not because of any disability discrimination but because Plaintiff filed the present lawsuit against various MSOP personnel. (See Section V.B.3.a, supra).

To state a claim for relief under the ADA, a plaintiff must demonstrate that he (1) has a "disability" within the meaning of the ADA, (2) is a "qualified individual" under the ADA, and (3) "suffered an adverse employment action as a result of the disability." Fenney v. Dakota, Minnesota & E. R. Co., 327 F.3d 707, 711 (8th Cir. 2003). Similarly, section 504 of the Rehabilitation Act prohibits discrimination on the basis of handicap in programs receiving federal financial assistance. 29 U.S.C. § 794(a). "To establish a prima facie case of disability discrimination under [the RA], the plaintiff must prove: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against on the basis of his disability." Valder, 217 F.R.D. at 494 (citing M.P. v. Independent School District No. 721, 326 F.3d 975, 981-82 (8th Cir. 2003) (citing, in turn, Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir. 1999))).

Because Plaintiff fails to allege sufficient, non-conclusory facts to demonstrate that any State Defendant discriminated against Plaintiff on the basis of a disability, the Court recommends dismissal of Count 5 under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### d.      Employment Discrimination – Count 8

At Count 8 of Plaintiff's First Amended Supplemental Complaint, Plaintiff alleges a violation of Title VII of the "Employment Discrimination Act." (Proposed First Amended Supp. Compl. [Docket No. 128-2], at 128-129).

Although the Court is unaware of any case law specifically concerning a civilly committed individual's ability to bring an employment discrimination claim under the Federal Civil Rights Act, or whether civilly committed individuals are entitled to Title VII protections, the Eighth Circuit has analogously held that inmates are not entitled to Title VII protections because inmates are not "employees" under the Federal Civil Rights Act. Iheme v. Smith, 529 F. App'x 808, 809 (8th Cir. 2013) (citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991) (holding that inmate was not "employee" under Title VII because his relationship with defendants arose from his status as inmate, not as employee)).

Regardless of whether Plaintiff has the requisite employer/employee relationship with MSOP to bring the present Title VII employment discrimination claim, Plaintiff fails to state a claim upon which relief may be granted. Plaintiff alleges that he is privy to an employment contract with MSOP "by virtue of his participation in the VWP [vocational programming]." (Proposed First Amended Supp. Compl. [Docket No. 128-2], ¶ 160). Plaintiff simply alleges that he was terminated from his vocational placement at MSOP, seemingly without cause as Plaintiff alleges that he gave no "invidious behaviors" to prompt termination. (Id. ¶¶ 162-164). Plaintiff

further articulates only the conclusory allegation that the State Defendants "have not terminated other employees/participants of the VWP, whom were same of similarly situated, than the Plaintiff for exercising their freedom of expression[.]" (Id. ¶ 165).

As the Court similarly articulated in the previous section, Plaintiff alleges no specific facts of discrimination in support of his purely conclusory Title VII claim. In fact, Plaintiff instead alleges that the State Defendants removed Plaintiff from his vocational programming not because of any discriminatory motive but because Plaintiff filed the present lawsuit against various MSOP personnel. (See Section V.B.3.a, supra). These allegations are insufficient to sustain a Title VII claim. See 42 U.S.C. § 2000e–2(a) (providing that it is unlawful for an employer to discriminate "because of such individual's race, color, religion, sex, or national origin"). Because Plaintiff fails to allege sufficient, non-conclusory facts to demonstrate that any State Defendant discriminated against Plaintiff in violation of Title VII, the Court recommends dismissal of Count 8 under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### e.      Conspiracy – Count 4

At Count 4 of Plaintiff's First Amended Supplemental Complaint, Plaintiff alleges, pursuant to 42 U.S.C. § 1985, that various individual State Defendants have conspired against Plaintiff. (Proposed First Amended Supp. Compl. [Docket No. 128-2], at 123-124).

In support of his conspiracy claim, Plaintiff generally alleges that he "was singled out by Brewer-Ottom, White, Macklanberg, Hoffman, Christenson, and Kenisal for the filing of lawsuits and thus conspired against." (Id. ¶ 143). Plaintiff alleges that Brewer-Ottom, White, Macklanberg, Hoffman, Christenson, and Kenisal held daily meetings, the alleged primary purpose of which was to discuss Plaintiff or, more specifically, "how to further place the Plaintiff

in harm's way and how to revoke the Plaintiff's VWP placement for filing lawsuits." (Id. ¶¶ 144-145). Plaintiff generally alleges that the named Defendants "acted jointly in all of the acts and omissions of the conspiracy alleged herein." (Id. ¶ 147).

First, Plaintiff has again failed to sufficiently plead specific facts to demonstrate that any of the State Defendants violated his constitutional rights, with the exception of Defendant Brewer-Ottom and Plaintiff's sole remaining Section 1983 allegation of retaliation. However, this sole surviving claim of alleged constitutional violation is insufficient to sustain Plaintiff's Section 1985 conspiracy claim. "Civil conspiracy requires an agreement to participate in unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action, but rather is sustainable only after an underlying tort claim has been established." K & S Partnership v. Continental Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991) (quotations and citations omitted). Plaintiff cannot demonstrate that he suffered a constitutional harm as a result of the State Defendants' alleged agreement and action if, as discussed relative to his underlying claims, he cannot demonstrate that he in fact suffered any constitutional harm perpetrated by more than one person, i.e. a constitutional violation that is the product of an agreement or "meeting of the minds."

Plaintiff fails to allege non-conclusory, plausible facts that would support his mere legal conclusion that the State Defendants actually conspired. Plaintiff merely alleges in conclusory fashion that the State Defendants held daily staff meetings at which they conspired against Plaintiff. However, Plaintiff alleges no specific facts in his First Amended Supplemental Complaint that would lead one to plausibly conclude that this was indeed the case or that there was any sort of "meeting of the minds." Like the complaint in Iqbal, which only generally alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to"

subject the plaintiff to harsh conditions for an illegitimate reason, Plaintiff's "allegations are conclusory and not entitled to be assumed true." Iqbal, 556 U.S. at 681 (emphasis added); see also Twombly, 550 U.S. at 554-55. The Court is "mindful that 'conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed.'" White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981) (quoting Sparkman v. McFarlin, 601 F.2d 261, 278 n.19 (7th Cir. 1979) (en banc) (Swygert, J., dissenting)). However, even though a plaintiff need not provide direct evidence of a conspiracy, he still must assert some plausible evidence.[12] Here, Plaintiff has alleged no specific facts that would support his Section 1985 conspiracy claims.

For these reasons, the Court recommends dismissal of Plaintiff's Section 1985 conspiracy claim (Count 4) under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Accordingly, the Court recommends **GRANTING** the State Defendants' Partial Motion to Dismiss, [Docket No. 100], in its entirety, dismissing all claims as alleged against any and all State Defendants with the exception of Plaintiff's Section 1983 retaliation claim (Count 1) as alleged against Defendant Brewer-Ottom in her individual capacity.[13]

### 4.    Plaintiff's Individual Capacity State Law Claims

Remaining before the Court as part of the First Amended Supplemental Complaint are Plaintiff's state law claims as alleged against various State Defendants, including Intentional

---

[12] See footnote 7, supra.

[13] The Court recommends Plaintiff's Section 1983 claims for monetary damages and all state law claims for any relief as alleged against the Minnesota Department of Human Services, MSOP, and any and all individually identified state employees sued in their official capacities be dismissed with prejudice, and that Plaintiff's remaining claims be dismissed without prejudice, pursuant to Rule 12(b)(6).

Infliction of Emotional Distress (Count 6); Negligent Infliction of Emotional Distress (Count 7); Defamation (Count 9); Breach of Contract (Count 10); Negligence (Count 11); and violation of the Minnesota Human Rights Act (Count 12). Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009). Because this Court recommends granting the State Defendants' Partial Motion to Dismiss, [Docket No. 100], with respect to all federal claims alleged by Plaintiff against any and all State Defendants save Plaintiff's sole claim of retaliation as alleged against Defendant Brewer-Ottom, the Court recommends declining to exercise supplemental jurisdiction over the remaining state law claims against those defendants. See Gregoire, 236 F.3d at 419-20 (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible).

However, the Court also recommends declining to exercise supplemental jurisdiction over Plaintiff's state law claims as alleged against Defendant Brewer-Ottom because the state law claims would drastically outweigh and overshadow the sole, discrete remaining federal claim against Brewer-Ottom. "[Supplemental jurisdiction] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. If it appears that state issue(s) substantially predominate, courts have tended towards dismissing said state law claims without prejudice, to be left for resolution by the state courts. Id.

Because the remaining state law claims would far outweigh and predominate over the sole, discrete remaining federal claim against Defendant Brewer-Ottom in the First Amended Supplemental Complaint, and because the Court recommends dismissal the same state law claims as alleged against all other State Defendants, the Court recommends declining to exercise supplemental jurisdiction over any of Plaintiff's state law claims asserted in the First Amended Supplemental Complaint.

## VI.    PLAINTIFF'S MOTIONS FOR PARTIAL DEFAULT JUDGMENT, [DOCKET NOS. 57, 80]

Plaintiff moves the Court for an entry of default judgment against Defendants Brown and Hammond. (Plaintiff's Motions for Partial Default Judgment [Docket Nos. 57, 80]).

By the Honorable Ann D. Montgomery's Order of March 26, 2014, the Court readdresses the portion of Plaintiff's Motion for Partial Default Judgment, [Docket No. 57], as alleged against Defendant Brown and Hammond only. (Order [Docket No. 75], at 2)   ("[Plaintiff's] motion for default judgment as to Joel Brown and Jeremy Hammond will not be denied. The matter will be referred to Judge Brisbois for further proceedings."). Accordingly, Plaintiff's motion for default at Docket Number 57 is virtually identical to Plaintiff's motion for default at Docket Number 80, which requests the Court enter default judgment against Defendants Brown and Hammond in the amount of $75,000.

Because the Court recommends declining to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Brown and Hammond, the Court **DENIES as moot** Plaintiff's Motions for Partial Default Judgment, [Docket Nos. 57, 80].

**VII.   PLAINTIFF'S MOTION TO CONSIDER THE DEFENDANTS' CURRENT MOTION TO DISMISS MOOT OR DENIED, [DOCKET NO. 88]**

Because the Court considered and recommends granting the State Defendants' Motion to Dismiss, [Docket No. 28], and for the reasons addressed at pages 12-13, <u>supra</u>, Plaintiff's Motion to Consider the Defendants' Current Motion to Dismiss Moot or Denied, [Docket No. 88], is also moot. Accordingly, the Undersigned recommends that this motion be denied as well.

**VIII.   CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

1.   That Plaintiff's Motion for Leave to File an Amended Complaint, [Docket No. 92], is **GRANTED**; and

2.   That Plaintiff's Motion to Amend Supplemental Complaint as of Right or Freely, [Docket No. 124], is **GRANTED**.


**IT IS HEREBY RECOMMENDED:**

1.   That the State Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED** in its entirety;

2.   That the State Defendants' Partial Motion to Dismiss, [Docket No. 100], be **GRANTED** in its entirety;

3.   That Plaintiff's Motion to Consider the Defendants' Current Motion to Dismiss Moot or Denied, [Docket No. 88], be **DENIED as moot**;

4.   That Plaintiff's Motions for Partial Default Judgment, [Docket Nos. 57, 80], be **DENIED as moot**; and

5.   That the Court decline to exercise supplemental jurisdiction over any and all of Plaintiff's state law claims as alleged in both the First Amended Complaint and First Amended Supplemental Complaint.

Dated: July 31, 2014

**s/ Leo I. Brisbois**
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 14, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by August 28, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.